**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.



FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE    AUG 1 0 2017

_____
CHIEF JUSTICE

This opinion was filed for record
at  8:00am  on  Aug 10, 2017

_____
SUSAN L. CARLSON
SUPREME COURT CLERK

## IN THE SUPREME COURT OF THE STATE OF WASHINGTON

PHILIP WATSON, an individual; RAY
CARTER, an individual; FARWEST
SPORTS, INC., d/b/a OUTDOOR
EMPORIUM, a Washington corporation;
PRECISE SHOOTER, LLC, a Washington
limited liability company; THE SECOND
AMENDMENT FOUNDATION, INC., a
Washington nonprofit corporation;
NATIONAL RIFLE ASSOCIATION OF
AMERICA, INC., a New York nonprofit
association; and NATIONAL SHOOTING
SPORTS FOUNDATION, a Connecticut
nonprofit association,

                    Appellants,

      v.

CITY OF SEATTLE, a municipality; ED
MURRAY, Mayor of the City of Seattle, in his
official capacity; SEATTLE DEPARTMENT
OF FINANCE and ADMINISTRATIVE
SERVICES, a department of the City of
Seattle; and GLEN LEE, Director of Finance
and Administrative Services, in his official
capacity,

                    Respondents.

NO. 93723-1

EN BANC

Filed    AUG 1 0 2017

STEPHENS, J.—This case concerns Seattle Ordinance 124833 (Ordinance), which imposes a "Firearms and Ammunition Tax" on each firearm and round of ammunition sold within the city limits. Its stated purpose is to raise revenue for public health research relating to gun violence and to fund related social programs. Two individual gun purchasers, Phillip Watson and Ray Carter, along with various organizations (hereinafter Watson),[1] brought this suit challenging the constitutionality of the Ordinance.

RCW 9.41.290 forbids the local regulation of guns. Watson argues that the Ordinance is actually a regulation, not a tax, and is preempted by RCW 9.41.290 in any case. Watson also argues that even if the Ordinance is a tax, it exceeds Seattle's delegated taxing authority. The King County Superior Court ruled in favor of Seattle, holding that the Ordinance imposes an authorized tax and that this tax is not preempted by RCW 9.41.290. Watson appealed, and the Court of Appeals certified the matter to this court.

We affirm the trial court. Under Washington law, a charge intended to raise revenue for the public benefit is a tax. While courts should be dubious of regulations masquerading as taxes (and vice versa), in this case Watson offers no convincing evidence that the Ordinance has a regulatory purpose or intent. It is a tax. The

---

[1] Watson and Carter have been dismissed from this suit, but we refer collectively to the appellants as "Watson" for ease of reference.

Ordinance is also authorized by the broad grant of taxing authority delegated to cities like Seattle. Finally, the Ordinance is not preempted by state law; RCW 9.41.290 preempts only municipal gun "regulation," not taxation.

## FACTS AND PROCEDURAL HISTORY

In August 2015, the Seattle City Council (Council) unanimously passed the Ordinance, and Mayor Ed Murray signed it into law. The Ordinance imposes a "Firearms and Ammunition Tax" of $25.00 on each firearm and $0.02 to $0.05 per round of ammunition sold within the city limits.[2] The tax applies only to licensed retail sellers of guns and ammunition.[3] Clerk's Papers (CP) at 76 (applying the tax to "every person engaging within the City in the business of making retail sales of firearms or ammunition"). The Ordinance became effective on January 1, 2016. *Id.* at 80.

The Council designed the Ordinance to fund gun safety programs and related public health research. The Ordinance recites that "gun violence directly affects the City and its residents," *id.* at 68, and notes it is difficult for cities to obtain outside funding for related research. *Id.* at 67 (stating that Congress has blocked federal funding for gun violence research since 1996). The Council locally funded a 2014 study by the

---

[2] "The tax rate shall be $25 per firearm sold at retail, $.02 per round of ammunition that contains a single projectile that measures .22 caliber or less sold at retail, and $.05 per round of ammunition for all other ammunition sold at retail." Clerk's Papers at 76.

[3] Retailers selling no more than one firearm (or fewer than 50 rounds of ammunition) per tax quarter are exempt. *Id.* at 77-78. Sales of antique firearms are also exempt. *Id.* at 77.

-3-

Harborview Injury Prevention and Research Center on the predictors and consequences of gun violence. *Id.* at 67 (noting that Harborview Medical Center leveraged that research to develop a hospital-based gun violence intervention program). The Council passed the Ordinance in part to create a local source of funding for gun violence research and programming. *Id.* at 68 ("[T]he City intends to . . . provide broad-based public benefits for residents of Seattle . . . by funding programs that promote public safety [and] prevent gun violence."). To this end, the Ordinance created the "Firearms and Ammunition Tax Fund," which is authorized to support "basic research" and "programs that promote public safety, prevent gun violence and address in part the cost of gun violence in the City." *Id.* at 78. The tax will generate an estimated $300,000 to $500,000 per year. *Id.* at 135.

Watson challenged the Ordinance in King County Superior Court, alleging that the "tax" imposed under the Ordinance is actually a regulation preempted by state gun laws. CP at 32-35; RCW 9.41.290 (the legislature "fully occupies and preempts the entire field of firearms regulation"). Watson argued in the alternative that even if the Ordinance is a tax, it exceeds Seattle's constitutional taxing authority. In response, Seattle argued that the Ordinance is a tax rather than a regulation, is not preempted by RCW 9.41.290, and is a lawful exercise of Seattle's taxing authority. Both parties filed motions for summary judgment. The trial court ruled in favor of Seattle. In a December

-4-

22, 2015 order, the court held that the Ordinance imposes a tax because its primary purpose is to raise revenue; that the tax is authorized by RCW 35.22.280(32); and that state preemption does not apply because RCW 9.41.290 preempts conflicting regulations, not taxes. The court granted Seattle's motion and dismissed the case. Watson appealed.

Division One of the Court of Appeals, pursuant to RCW 2.06.030 and RAP 4.4, certified the following question to this court: "Whether a municipal ordinance imposing a tax on retail firearm and ammunition sales within the municipality is a constitutional and lawful exercise of taxing authority?" Order of Certification, *Watson v. City of Seattle*, No. 74534-4-I (Wash. Ct. App. Oct. 14, 2016). We accepted direct review.

## STANDARD OF REVIEW

We review constitutional challenges and questions of statutory interpretation de novo. *See, e.g., Okeson v. City of Seattle*, 150 Wn.2d 540, 548-49, 78 P.3d 1279 (2003). City ordinances are presumed to be valid and constitutional; the challenging party has the burden of showing unconstitutionality. *See State v. Kirwin*, 165 Wn.2d 818, 825, 203 P.3d 1044 (2009); *State v. Immelt*, 173 Wn.2d 1, 6, 267 P.3d 305 (2011). As with statutory interpretation, the primary objective of courts interpreting an ordinance is to "ascertain and carry out the legislature's intent" by giving effect to the ordinance's "plain meaning." *Arborwood Idaho, LLC v. City of Kennewick*, 151 Wn.2d 359, 367,

-5-

89 P.3d 217 (2004); *see also Bowie v. Dep't of Revenue,* 171 Wn.2d 1, 11, 248 P.3d 504 (2011).

ISSUES

(1)     Does the Ordinance levy a tax or instead assess a regulatory fee?

(2)     If the Ordinance imposes a tax, is that tax within Seattle's taxing authority under RCW 35.22.280(32)?

(3)     Is the Ordinance preempted by RCW 9.41.290?

ANALYSIS

Labeling something a tax does not make it so. Watson argues that Seattle levied a charge on the sale of firearms and ammunition in order to restrict gun sales, making the "tax" imposed by the Ordinance a regulatory fee that is facially preempted by RCW 9.41.290. In the alternative, Watson argues that even if classified as a tax, the Ordinance exceeds Seattle's taxing authority under RCW 35.22.280(32). Watson also asserts an alternative preemption argument not raised below: that RCW 9.41.290 preempts taxation as well as regulation and therefore preempts the Ordinance under either classification.

We reject each of Watson's arguments. Following *Covell v. City of Seattle,* 127 Wn.2d 874, 905 P.2d 324 (1995), the Ordinance is a tax because its primary purpose is to raise revenue for public services. To be a valid tax, the Ordinance must be based on

a delegation of legislative taxing authority. Here, the Ordinance is authorized by RCW 35.22.280(32), which delegates broad taxing authority to first class cities. Finally, the Ordinance is not preempted. RCW 9.41.290 preempts only "regulation" of firearms, not taxation. There is no basis for selectively invalidating the Ordinance while leaving traditional (and unchallenged) sales and gross receipts taxes in place.

A.     Under the *Covell* Analysis, the Ordinance Imposes a Tax, Not a Regulatory Fee

We turn first to the question of whether the charge imposed on firearm and ammunition sales is a tax or a regulatory fee. If the Ordinance is a regulation, it is facially preempted by RCW 9.41.290 and our analysis ends. If the Ordinance instead levies a tax, we must then determine whether that tax is authorized. *See infra* Part B.

Generally speaking, a charge "imposed to raise money for the public treasury" is a tax. *Okeson*, 150 Wn.2d at 551. Nontax charges, by contrast, may be imposed for regulatory purposes. This court refers collectively to nontax charges as "'regulatory fees.'" *Samis Land Co. v. City of Soap Lake*, 143 Wn.2d 798, 805, 23 P.3d 477 (2001) (quoting *Covell*, 127 Wn.2d at 878 n.1). Classifying a charge as a tax or a fee is important because distinct constitutional constraints govern each classification. Fees are generally based on a local government's police powers, while the taxing authority of Washington's municipalities largely depends on legislative delegation. *See Covell*, 127 Wn.2d at 878 (characterizing Seattle's police powers as "extensive"); *Okeson*, 150

-7-

Wn.2d at 551 (noting that "[a] local government does not have the power to impose taxes without statutory or constitutional authority"). Thus, there is a concern that cities could "avoid the constitutional limitations on taxes" by simply characterizing a tax as a regulatory fee. *Id.* at 552.

*Courts Consider the* Covell *Factors To Distinguish between Taxes and Fees*

To determine whether an ordinance imposes a tax or a fee, Washington courts follow the three-part test outlined in *Covell*. 127 Wn.2d at 879. The first—and most important—*Covell* factor asks whether the "'primary purpose'" of the ordinance is to raise revenue or to regulate. *Id.* (quoting *Hillis Homes, Inc. v. Snohomish County*, 97 Wn.2d 804, 809, 650 P.2d 193 (1982) (*Hillis Homes* I)). If the legislative purpose behind the Ordinance is "'to accomplish desired public benefits which cost money,'" the charge is a tax. *Id.* (quoting *Hillis Homes* I, 97 Wn.2d at 809). On the other hand, if the primary purpose is to exert regulatory control over those paying the fee, then the "charges are properly characterized as 'tools of regulation,' rather than taxes." *Teter v. Clark County*, 104 Wn.2d 227, 239, 704 P.2d 1171 (1985).

The second *Covell* factor asks "whether the money collected must be allocated only to the authorized regulatory purpose." *Covell*, 127 Wn.2d at 879. Collecting funds into a segregated, dedicated account indicates a regulatory fee. *See, e.g., Hillis Homes, Inc. v. Pub. Util. Dist. No. 1*, 105 Wn.2d 288, 300, 714 P.2d 1163 (1986) (*Hillis*

-8-

*Homes* II) (water fees used to pay only for improvements to the water system). Tax revenue, by contrast, is more likely to be mixed into the general fund. *See Samis Land Co.*, 143 Wn.2d at 810-11 (revenue from vacant lot tax applied to city-wide utility system expenses). However, *Covell* itself recognized that this factor is "not dispositive." 127 Wn.2d at 885 (determining that Seattle's street utility charge constituted a tax, despite the segregation of fees). While the segregation of fees is part of the analysis, segregation alone is not sufficient; the funds must also be used to "serve[] a regulatory purpose." *Okeson*, 150 Wn.2d at 553 ("All funds could be deposited into special accounts, and that would not necessarily turn taxes into fees."). Otherwise, taxes could be "guised as fees" simply by depositing them into a dedicated account. *Id.*

The third *Covell* factor examines "whether there is a direct relationship between the fee charged and the service received [or] the burden produced by the fee payer." *Covell*, 127 Wn.2d at 879. If so, the charge is likely a regulatory fee. *Id.* However, if the amount does not correlate to the cost of the burden (or the value of the benefit), the charge is likely a tax. *Id.*

In this context, "direct relationship" means that the amount paid is calculated to offset the burden created (or benefit received) by the payer. *Id.* This relationship does not need to be mathematically precise or individualized. *See Teter*, 104 Wn.2d at 238;

-9-

*Hillis Homes* II, 105 Wn.2d at 301. Nevertheless, there must be some "'practical basis'" for asserting that it exists. *Covell*, 127 Wn.2d at 884 (finding no direct relationship between a flat lighting tax, uniformly assessed, and the benefit received by individual utility users).

### Pursuant to Covell, *the Ordinance Imposes a Tax*

Watson asserts that the Ordinance is, in effect, a regulation masquerading as a tax. Watson argues that all three *Covell* factors indicate the Ordinance should be classified as a regulation. *See* Appellants' Opening Br. at 10. He argues that (1) the Ordinance's primary purpose is regulatory because it seeks to limit access to firearms, (2) segregation of funds indicates the Ordinance is a regulation, and (3) there is a "direct relationship" between the tax and the burden of gun violence. *Id.* at 10-14. We disagree.

The first *Covell* factor indicates that the Ordinance imposes a tax. The statutory text is clear: the purpose of the Ordinance is to "raise general revenue . . . to provide broad-based public benefits for residents of Seattle." CP at 68. Revenue raised will "fund[] programs that promote public safety," including "youth education and employment programs," and support "basic research." *Id.* at 78. Because public health research and gun safety programs are "'desired public benefits which cost money,'" the Ordinance imposes a tax. *Covell*, 127 Wn.2d at 879 (quoting *Hillis Homes* I, 97 Wn.2d

-10-

at 809). There is no regulatory language in the text of the Ordinance or evidence of a regulatory purpose. *See* CP at 66-79. As the superior court observed, other than requiring payment of the tax, the Ordinance "does not place any burden or restriction on the plaintiffs [or] prescribe any activity." *Id.* at 180. The Ordinance does not limit retailers in the number or type of firearms and ammunition they can sell, nor does it restrict what a gun buyer can do with purchased firearms or ammunition.

Nevertheless, Watson urges this court to look past the Ordinance's "textual wrapping paper," Appellant's Reply Br. at 3, to its alleged regulatory purpose: "burden[ing] the sale of firearms and ammunition." *Id.* Watson relies heavily on "legislative history" to support this analysis, quoting pro-gun-control statements by the Council's members as evidence that the Ordinance is part of a broader regulatory scheme to limit gun access. Appellants' Opening Br. at 10-11 (citing CP at 52, 61-62, 88). Watson's argument would unwisely embroil courts in second-guessing the motives of lawmakers. Statements by "individual legislator[s] do[] not show legislative intent." *State ex rel. Citizens Against Tolls (CAT) v. Murphy*, 151 Wn.2d 226, 238, 88 P.3d 375 (2004); *Seattle Times Co. v. County of Benton*, 99 Wn.2d 251, 255 n.1, 661 P.2d 964 (1983) (resort to statements by legislators inappropriate unless "more substantial" legislative history is unavailable, such as bill reports specific to the statute

before the court).[4] As a tool of statutory interpretation, an examination of legislative history is intended to *supplement* textual analysis—not to replace it entirely, as Watson urges here. *See, e.g., Seattle Times*, 99 Wn.2d at 255 n.1. *Covell* addressed the primacy of statutory language when differentiating a tax from a fee: classification "turns on a determination of the primary purpose of the fees *as derived from the language of the authorizing and implementing legislation*." 127 Wn.2d at 886 (emphasis added). Here, the plain language of the Ordinance states it imposes a "tax." CP at 75.

The second *Covell* factor is inconclusive. Because revenue is segregated into the Firearms and Ammunition Tax Fund, this factor initially suggests that the Ordinance may be a regulation. CP at 78; *see also Lane v. City of Seattle*, 164 Wn.2d 875, 883, 194 P.3d 977 (2008) (segregation into a dedicated account indicates a regulatory fee). However, segregation of funds is not the only requirement for classification as a fee; the funds must also be "allocated only to the authorized regulatory purpose." *Covell*, 127 Wn.2d at 879. An ordinance with no regulatory language cannot "authorize" a regulatory purpose, much less dedicate funds to that end. *Id.* Here, the Ordinance dedicates the revenue to education and research. CP at 78. Because the Ordinance segregates funds but allocates them for a nonregulatory purpose, the second factor is

---

[4] Furthermore, even if the entire Council expressed support for gun regulations, it does not follow that *this* Ordinance must be a regulation. *See, e.g., Samis Land Co.*, 143 Wn.2d at 809 (classifying charge as a tax because although it was part of an "overall regulatory design," the specific purpose of the charge was to raise revenue).

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

inconclusive. *See Okeson*, 150 Wn.2d at 553 (revenue deposited into the city's light fund, absent a regulatory purpose, is inconclusive); *Covell*, 127 Wn.2d at 885 (segregation of funds is "not dispositive").

Watson maintains that the Ordinance does allocate funds to a regulatory purpose, because it requires the "tracking[] and auditing of the number of firearms and rounds of ammunition sold by retailers." Appellants' Opening Br. at 11. But Watson does not explain how requiring retailers to keep sales records for tax purposes—already mandated by RCW 82.32.070 with respect to the gross receipts tax and sales tax— constitutes regulation. *See id.* On this record, the second factor remains inconclusive.

Finally, the third *Covell* factor also indicates that the Ordinance is a tax. The Ordinance imposes a flat charge of $25.00 per firearm sold, and $0.02 to $0.05 per round of ammunition. CP at 76. There does not appear to be a "direct relationship" between the amount of annual revenue the Ordinance is expected to generate ($300,000 to $500,000, *see* CP at 135) and the economic burden of gun violence in King County (roughly $180 million per year, *see* CP at 66). *Covell*, 127 Wn.2d at 879. Moreover, a flat tax is uniformly applied, while we would expect a regulatory fee to vary according to the value of the burden or benefit. *Id.* at 884-85.

Watson advances a more lax interpretation of *Covell*, noting that a fee may be regulatory even if it is not individually calculated. *See* Appellants' Opening Br. at 13

(citing *Okeson*, 150 Wn.2d at 554). Watson is correct that a "direct relationship," *Covell*, 127 Wn.2d at 879, does not mean one that is mathematically precise.[5] *See Teter*, 104 Wn.2d at 238. However, in this case it does not appear that the Council made *any* attempt to correlate the economic burden of gun violence with the revenue generated by the tax. The record does not reveal how the Council arrived at the tax rate imposed.[6] Under *Covell*, when these "calculations" are completely absent, the charge is a tax. 127 Wn.2d at 884 (classifying a flat $2 per unit charge as a tax). Without some mechanism to ensure the amount paid reflects the payer's burden, there is no "'practical basis'" for asserting a direct relationship between the two. *Id.*

In sum, the first and third *Covell* factors indicate that the Ordinance is a tax, not a regulation. The second factor is inconclusive. Under Washington law, the Ordinance is properly classified as a tax. *See, e.g., Covell*, 127 Wn.2d at 888; *Okeson*, 150 Wn.2d at 553; *Arborwood Idaho, LLC*, 151 Wn.2d at 372-73 (classifying charge as a tax despite the second *Covell* factor indicating "fee"). Watson's first argument thus fails:

---

[5] Watson also seems to argue that the direct relationship requirement is satisfied because the Ordinance will fund programs that "address" the "alleged burdens" created by Seattle gun sales. Appellants' Opening Br. at 14. This misunderstands the third *Covell* factor, which is specifically concerned with determining whether the tax *rate* was chosen to offset the economic burden. *See Covell*, 127 Wn.2d at 884.

[6] It appears the Ordinance was likely modeled after a nearly identical Illinois tax. *See* CP at 124-30 (Ex. 1 to Decl. of Laurie Edelstein (*ERP, Inc. v. Ali*, No. 13 CH 07263, at 1 (Ill. Cir. Ct. Cook County, Jan. 22, 2014)) (upholding a $25 tax on firearms purchases)).

-14-

as a tax, the Ordinance is not facially preempted by state law. *See* RCW 9.41.290. However, we must further consider whether the Ordinance exceeds Seattle's municipal taxation authority.

B.    The Ordinance Is Legislatively Authorized

Local taxation must be authorized by a legislative delegation of taxing power. *See* WASH. CONST. art. I, § 1. Watson acknowledges that RCW 35.22.280, which outlines the broad delegation of legislative power to first class cities, authorizes Seattle to levy local taxes. *See* Appellants' Opening Br. at 16. However, Watson argues that RCW 35.21.710 severely limits that authority, requiring business taxes to be uniform, measured by gross receipts, and capped at a certain rate. *See* Appellants' Opening Br. at 17-19. Watson's argument is inconsistent with Washington's constitutional authorization of local taxing authority and this court's precedent. *See Citizens for Financially Responsible Gov't v. City of Spokane*, 99 Wn.2d 339, 343, 662 P.2d 845 (1983) (holding that RCW 35.22.280(32) delegates broad taxing authority to first class cities). Further, Watson's statutory analysis is unsupported by RCW 35.21.710, which standardizes gross receipts taxes but does not prohibit other forms of taxation.

The Washington State Constitution generally vests taxing power in the state legislature. *See* WASH. CONST. art. I, § 1. Municipal corporations have no inherent power to tax. *See Arborwood Idaho, LLC*, 151 Wn.2d at 365-66; 16 EUGENE

-15-

MCQUILLIN, THE LAW OF MUNICIPAL CORPORATIONS § 44.5 (3d ed. 2013). However, the constitution contains at least two important exceptions to the legislature's plenary taxation authority. First, article VII permits the legislature to delegate tax powers to cities and towns. *See* WASH. CONST. art. VII, § 9 ("For all corporate purposes, all municipal corporations may be vested with authority to assess and collect taxes."). Second, article XI actively limits the legislature's power by stating that certain taxes may be assessed only by cities:

> The legislature shall have no power to impose taxes upon counties, cities, towns or other municipal corporations, or upon the inhabitants or property thereof, for county, city, town, or other municipal purposes, but may, by general laws, vest in the corporate authorities thereof, the power to assess and collect taxes for such purposes.

WASH. CONST. art. XI, § 12. Article XI expressly authorizes the legislature to grant cities the power to levy taxes for "county, city, town, or other municipal purposes." *Id.* More significantly, it strips the legislature of the authority to directly impose such taxes. Only local authorities, exercising duly delegated taxing power, may levy local taxes. *Id.*

In part, these provisions reflect Washington's adoption of what scholars refer to as "home rule"—shorthand for the presumption of autonomy in local governance. *See, e.g.*, Hugh Spitzer, *"Home Rule" vs. "Dillon's Rule" for Washington Cities*, 38 SEATTLE U. L. REV. 809 (2015); *Citizens for Financially Responsible Gov't*, 99 Wn.2d at 343 (describing the legislature's delegation of "broad powers" to cities). The "home

-16-

rule" principle seeks to increase government accountability by limiting state-level interference in local affairs. *See* Spitzer, *supra,* at 809. This is particularly important with respect to local taxation authority. *See, e.g.,* Matthew Senechal, *Revisiting* Granite Falls*: Why the Seattle Monorail Project Requires Re-examination of Washington's Prohibition on Taxation without Representation,* 29 SEATTLE U. L. REV. 63, 73 (2005) (noting that "home rule" is "consistent with the deep-seated Anglo-American principle of keeping taxation as close to the tax-burdened electorate as possible"); Br. of Amicus Curiae Wash. State Ass'n of Mun. Att'ys at 3 (establishing the legislature has delegated local taxing authority "[s]ince the beginning of statehood"). In this context, it is appropriate for Washington courts to "liberally construe[]" legislative grants of power to cities, particularly first class cities. *Citizens for Financially Responsible Gov't,* 99 Wn.2d at 343.

*RCW 35.22.280(32) Grants Seattle the Authority To Tax Local Businesses*

RCW 35.22.280 enumerates the broad legislative powers delegated to first class cities, including Seattle.[7] In part, RCW 35.22.280 empowers Seattle to "grant licenses for any lawful purpose, and to fix by ordinance the amount to be paid therefor." *Id.* at (32). Licensing authority includes the authority to raise revenues by taxing local businesses. *See Citizens for Financially Responsible Gov't,* 99 Wn.2d at 343; *Pac. Tel.*

---

[7] *See* RCW 35.22.010 (establishing Seattle as a first class city).

*& Tel. Co. v. City of Seattle*, 172 Wash. 649, 654, 21 P.2d 721 (1933), *aff'd*, 291 U.S. 300, 54 S. Ct. 383, 78 L. Ed. 810 (1934). This taxation must fall into one of three categories: property, income, or excise taxes. *See* WASH. STATE DEP'T OF REVENUE, TAX REFERENCE MANUAL 3 (Jan. 2010). This court categorizes business license taxes as excise taxes. *See Pac. Tel.*, 172 Wash. at 654.

As the court explained in *Pacific Telephone*, the "power granted to the city to issue licenses is dual: (1) for regulation; (2) for revenue." *Id.* When the power is exercised for revenue purposes, licensing is merely the "method provided for raising the revenues." *Id.* A tax that is imposed pursuant to this power is an excise because it is "levied upon the right to do business, not upon the right to exist." *Id.* The most common tax paid by Washington businesses, the business and occupation (B&O) tax, is an excise tax. *See* TAX REFERENCE MANUAL, *supra*, at 3 (noting that although a B&O tax is measured by gross income or receipts, "it is levied on the privilege of engaging in business and is categorized . . . as an excise tax"). In this case, the Ordinance imposes a different type of excise tax: a flat tax on "the business of making retail sales of firearms or ammunition." CP at 76.

*A Flat Tax on Firearms and Ammunition Sales Is Not Limited by RCW 35.21.710*

Watson acknowledges that RCW 35.22.280(32) grants Seattle the authority to impose excise taxes on retailers as a condition of doing business in the city. Appellants'

Opening Br. at 16. The tax in this case, a flat tax on the sale of firearms and ammunition,

is an excise tax. *See supra* Part B. Nevertheless, Watson argues that the Ordinance is

prohibited by RCW 35.21.710, which regulates another type of excise tax: the

municipal B&O tax. Appellants' Opening Br. at 16-17; RCW 35.21.710 (establishing

maximum rate for B&O taxes measured by gross receipts). Watson asserts that all

municipal business license taxes must comply with RCW 35.21.710. Appellants'

Opening Br. at 17-18. Watson's reading of RCW 35.21.710 is incorrect.

RCW 35.21.710 states in part:

> Any city which imposes a license fee or tax upon business activities consisting of the making of retail sales of tangible personal property which are measured by gross receipts or gross income from such sales, shall impose such tax at a single uniform rate upon all such business activities. The taxing authority granted to cities for taxes upon business activities measured by gross receipts or gross income from sales shall not exceed a rate of .0020.

SEATTLE MUNICIPAL CODE 5.45.050(C) (raising the statutory maximum rate in Seattle

to .00215). Watson argues that the Ordinance violates RCW 35.21.710 because a tax

targeting a single type of retailer is not uniform, and any additional tax on retailers

would exceed the statutory rate. *See* Appellants' Opening Br. at 19-21. However,

RCW 35.21.710 does not address *all* city taxes on business activities. By its plain

language, the statute applies only to taxes "which are *measured by* gross receipts or

gross income." RCW 35.21.710 (emphasis added) (requiring that "such" taxes—i.e.,

those measured as a percentage of gross receipts—must be uniform and not exceed the statutory rate).

The tax in this case is measured differently. The Ordinance imposes a flat $25.00 tax on each gun sold, and a flat $0.02 to $0.05 tax on each round of ammunition, regardless of price. CP at 76. The tax is calculated on a per unit basis, rather than measured as a percentage of the retailer's income. *Id.* Nor does the Ordinance affect gun retailers' B&O tax *rate*. By asserting that it does, Watson apparently confuses the rate of a single tax with gun retailers' aggregate tax *burden*. *See* Appellants' Opening Br. at 24-25. RCW 35.21.710 caps the B&O gross receipts tax rate, not the sum total of all taxes that can be levied on businesses. Statutory restrictions on one type of tax should not be misinterpreted as capping a taxpayer's total liability.

Despite the clear statutory language, Watson argues that RCW 35.21.710's "reference to gross receipts is not . . . a limitation on the statute's restriction of local taxing authority." *Id.* at 26. Unsurprisingly, Watson provides no support for the assertion that statutory language should not serve as a "limitation" on statutory application. Watson also seems to argue that because RCW 35.21.710 was designed to "restrict the tax *rates* local governments could assess," the statute impliedly repeals Seattle's authority to levy all *types* of taxes on business (other than the B&O tax discussed). *W. Telepage, Inc. v. City of Tacoma,* 140 Wn.2d 599, 613, 998 P.2d 884

-20-

(2000) (emphasis added); Appellants' Opening Br. at 19. This is incorrect. Restraints on taxing authority will be found only if there is "specific, express statutory language." *Enter. Leasing, Inc. v. City of Tacoma*, 93 Wn. App. 663, 669, 970 P.2d 339 (citing *Commonwealth Title Ins. Co. v. City of Tacoma*, 81 Wn.2d 391, 502 P.2d 1024 (1972)), *aff'd*, 139 Wn.2d 546, 988 P.2d 961 (1999). The legislature has not provided such language here.

Watson's restrictive characterization of municipal taxing authority is inconsistent with Washington case law. *See Puget Sound Energy, Inc. v. City of Bellingham*, 163 Wn. App. 329, 337, 259 P.3d 345 (2011) (cities may freely define their taxation categories). Absent restriction, RCW 35.22.280(32) grants Seattle broad authority to tax retailers for the privilege of doing business within city limits. *See Citizens for Financially Responsible Gov't*, 99 Wn.2d at 343.[8] To hold otherwise would significantly restrict constitutionally authorized and legislatively recognized local

---

[8] Nor is RCW 35.22.280(32) Seattle's only statutory grant of taxing authority. RCW 35.22.570 also grants first class cities all powers Title 35 RCW gives to other cities. *See* Br. of Resp'ts at 25 n.7. With respect to municipal business taxes, Seattle has the authority to "collect a license tax for the purposes of revenue and regulation," a power granted to second class cities. RCW 35.23.440(8). Seattle also possesses the same tax authority granted to code cities, empowering it to "impose excises for regulation or revenue." RCW 35A.82.020.

taxation authority. We decline to do so, and find that the Firearms and Ammunition Tax is authorized.[9]

C.    RCW 9.41.290 Does Not Preempt Authorized Municipal Taxes on Firearm and Ammunition Sales

A state statute preempts an ordinance if the statute occupies the field or if the statute and the ordinance irreconcilably conflict. *See Brown v. City of Yakima*, 116 Wn.2d 556, 559, 807 P.2d 353 (1991); *Lawson v. City of Pasco*, 168 Wn.2d 675, 679, 230 P.3d 1038 (2010) ("[A] state statute preempts an ordinance on the same subject if the statute occupies the field, leaving no room for concurrent jurisdiction, or if a conflict exists such that the statute and the ordinance may not be harmonized."). Field preemption occurs when there is express legislative intent to occupy the entire field, or when such intent is necessarily implied. *Brown*, 116 Wn.2d at 560. Legislative intent may be implied from the statute's purpose and factual circumstances. *See HJS Dev., Inc. v. Pierce County*, 148 Wn.2d 451, 477, 61 P.3d 1141 (2003). Conflict preemption occurs when "an ordinance permits what state law forbids or forbids what state law permits." *Lawson*, 168 Wn.2d at 682. An ordinance is constitutionally invalid when it

---

[9] Our conclusion should be understood in the context of the arguments raised in this case. Watson has not argued that the tax imposed by the Ordinance is confiscatory or violates due process. We have not been asked to consider the full range of possible restrictions on municipal authority to tax, much less the natural, political limitations the City acknowledges. Wash. Supreme Court oral argument, *Watson v. City of Seattle*, No. 93723-1 (Feb. 16, 2017), at 37 min., 35 sec. through 38 min., 57 sec., *video recording by* TVW, Washington State's Public Affairs Network, http://www.tvw.org.

"directly and irreconcilably conflicts with the statute." *Brown,* 116 Wn.2d at 561.

However, if the statute and ordinance may be read in harmony, no conflict will be

found. *Lawson,* 168 Wn.2d at 682.

> The Legislature included clear preemption language in chapter 9.41 RCW:

> The state of Washington hereby *fully occupies and preempts the entire field of firearms regulation* within the boundaries of the state, including the registration, licensing, possession, purchase, sale, acquisition, transfer, discharge, and transportation of firearms . . . . Cities, towns, and counties or other *municipalities may enact only those laws and ordinances relating to firearms that are specifically authorized* by state law.

RCW 9.41.290 (emphasis added).

Watson argues this language is proof the legislature intended RCW 9.41.290 to

have a "wide and exhaustive" preemptive effect. Appellants' Opening Br. at 32.

Essentially, Watson argues that the legislature has occupied the entire field of gun-

related laws and ordinances unless specifically authorized by state law. *Id.* We

disagree. First, as explained, regulation is not taxation. RCW 9.41.290 does not

expressly or impliedly preempt taxation. Further, Seattle's broad statutory taxing

authority pursuant to RCW 35.22.280(32) does not conflict with RCW 9.41.290's

narrow regulation of municipal B&O taxes.

Initially, there is no evidence of express preemption. As discussed, the

Ordinance imposes a tax, not a regulation. *See supra* Part A. On its face, RCW

9.41.290 is inapplicable here because it preempts only the "regulation" of firearms.

RCW 9.41.290 expressly operates in the regulatory context. RCW 9.41.290 (occupying the field of "firearms regulations," including regulations relating to the "sale" and "licensing" of guns). RCW 9.41.290 makes no mention of taxation. In fact, RCW 9.41.290's focus on regulation is consistent with its broader statutory context—in all of chapter 9.41 RCW, the word "tax" appears only once. *See* RCW 9.41.010 (exempting unlicensed transfers from sales taxes if the buyer and seller comply with background check requirements). Legislative silence is a poor foundation on which to build a case for express field preemption.[10] *See, e.g., Brown*, 116 Wn.2d at 560.

In the absence of explicit language preempting taxation, Watson's argument is best understood as a case for *implied* field preemption. Watson cites a series of legislative amendments to chapter 9.41 RCW, each expanding the preemptive scope of RCW 9.41.290. *See* Appellants' Opening Br. at 32-33 (citing LAWS OF 1985, ch. 428, §§ 1-2; LAWS OF 1994, 1st Spec. Sess., ch. 7, §§ 428-429); *see also Chan v. City of Seattle*, 164 Wn. App. 549, 551-53, 265 P.3d 169 (2011) (summarizing history). Watson argues that these legislative changes, each in response to a purported attempt

---

[10] Seattle goes further, urging this court to construe the omission of taxation as explicit evidence of legislative intent to allow local firearms taxes. *See* Br. of Resp'ts at 35 (citing *Wash. State Republican Party v. Wash. State Pub. Disclosure Comm'n*, 141 Wn.2d 245, 280, 4 P.3d 808 (2000) ("Where a statute specifically lists the things upon which it operates, there is a presumption that the legislating body intended all omissions.")). We do not draw so much from legislative silence, believing this argument is more appropriate in the context of implied field preemption, discussed *infra*.

*Watson, et al. v. City of Seattle, et al.*, 93723-1

by Washington courts to narrow the preemptive field, "reaffirmed or expanded the all-inclusive scope of RCW 9.41.290." Appellants' Opening Br. at 33.

As the State points out in its amicus brief, each of Watson's examples relates only to regulatory preemption—not taxation. *See* Amicus Br. of the State of Wash. at 13-14. At issue in each case was an attempt by city government to control or regulate firearms. *See Second Amendment Found. v. City of Renton*, 35 Wn. App. 583, 668 P.2d 596 (1983) (firearm possession in bars); *City of Seattle v. Ballsmider*, 71 Wn. App. 159, 856 P.2d 1113 (1993) (discharge of firearms in populated areas); *Chan*, 164 Wn. App. 549 (firearm possession in public parks). Rather than advancing Watson's argument, these examples further highlight the regulatory focus of chapter 9.41 RCW. Furthermore, because they address only regulatory preemption, these cases are not instructive as to whether preemption of firearm taxation is necessarily implied by RCW 9.41.290. *Brown*, 116 Wn.2d at 560. Repeals by implication are disfavored. *See State ex rel. King County v. State Tax Comm'n*, 174 Wash. 336, 342, 24 P.2d 1094 (1933). Expanding preemption in one area does not mean that the legislature intended to extend preemption to other areas.

The statutory purpose and context for chapter 9.41 RCW also weigh against a finding of implied field preemption. *See HJS Dev., Inc.*, 148 Wn.2d at 477 (when appropriate, field preemption may be inferred from "the purposes of the particular

legislative enactment and [the] facts and circumstances upon which the statute was intended to operate"). In *Cherry v. Municipality of Metropolitan Seattle,* this court found that the purpose of chapter 9.41 RCW was to "advance uniformity in criminal firearms *regulation.*" 116 Wn.2d 794, 801, 808 P.2d 746 (1991) (emphasis added). The statute can achieve this legislative purpose without restricting municipal tax authority. Moreover, in its statutory context, chapter 9.41 RCW is an exercise of legislative authority to remove select regulatory powers from Washington's municipal corporations. The statute thus acts as a limitation on municipal *police* powers. It does not follow that chapter 9.41 RCW also restricts cities' taxing power, which relies on a distinct source of statutory authority. *See* RCW 35.22.280(32); *supra* Part B.

When the legislature does intend to preempt taxation, it typically does so explicitly. For example, RCW 82.02.020 explicitly preempts municipal taxes on cigarette sales, stating that "the state preempts the field of imposing retail sales and use taxes and taxes upon . . . cigarettes, and no county, town, or other municipal subdivision shall have the right to impose taxes of that nature."[11] This sounds nothing like the language used in RCW 9.41.290 ("[t]he state . . . fully occupies and preempts the entire field of firearms regulation"). RCW 82.02.020, by its plain language, preempts

_____

[11] RCW 82.02.020 further preempts taxes on building construction and certain types of gambling. Other statutes provide similar examples of explicit language preempting taxation. *See, e.g.,* RCW 82.38.280 (prohibiting municipal excise taxes on special fuel); RCW 48.14.020(5) (preempting the field of imposing excise or privilege taxes on insurers).

municipal taxation; RCW 9.41.290, by contrast, contemplates limiting the exercise of municipal regulatory control over firearms. We decline to infer intent to preempt taxes from statutory language contemplating regulation. As the Supreme Court of Virginia observed in a similar case, the legislature is "well aware of how to say taxation when it means taxation." *City of Virginia Beach v. Va. Rest. Ass'n, Inc.*, 231 Va. 130, 133-34, 341 S.E.2d 198 (1986).

The Illinois Circuit Court, which considered a preemption question nearly identical to the issue here, came to a similar conclusion. *See* CP at 127 (*ERP, Inc. v. Ali*, No. 13 CH 07263, at 1 (Ill. Cir. Ct. Cook County, Jan. 22, 2014) (holding that an Illinois statute preempting local "'regulation, licensing, possession, registration, and transportation'" of firearms did not preempt taxation: "Taxes are conspicuously absent from the list of measures that are preempted." (quoting 430 ILL. COMP. STAT. 66/90, 65/131))). *Virginia Restaurant Ass'n* and *ERP, Inc.*, while nonbinding, highlight a familiar refrain: courts should not speak for the legislature when it can speak for itself. With respect to chapter 9.41 RCW and the preemption of local firearms taxation, it has not done so.

Finally, Watson seems to argue that the Ordinance and chapter 9.41 RCW stand in conflict. *See* Appellants' Opening Br. at 30. RCW 9.41.290 states that cities "may enact only those laws and ordinances relating to firearms that are specifically authorized

-27-

by state law." Watson characterizes the Ordinance as an unauthorized "law passed directly and exclusively on the sale of firearms and ammunition in the City of Seattle." *Id.* By authorizing the tax, reasons Watson, the Ordinance "permits what state law forbids." *Lawson*, 168 Wn.2d at 682.

Watson's argument is unpersuasive. First, it leads to an absurd result: because no taxation of firearms is "specifically authorized" by chapter 9.41 RCW, Watson's interpretation would exempt firearms sales from *all* forms of taxation—including the basic sales tax and the B&O tax. This is clearly not the statute's effect, and Watson does not explain how RCW 9.41.290 can preempt this Ordinance while leaving other taxes in force.[12] Second, Watson reads the "specifically authorized" sentence out of context. *See Burns v. City of Seattle*, 161 Wn.2d 129, 140, 164 P.3d 475 (2007) (instructing Washington courts to interpret "the words of a particular provision in the context of the statute in which they are found"). In context, the meaning is clear: because the legislature preempted the "regulation" of firearms, all *regulatory* "laws and ordinances" must be "specifically authorized."[13] RCW 9.41.290. The operative words are in the same paragraph, separated by only three lines. *Id.* We reject Watson's

---

[12] In any event, the tax levied by the Ordinance *is* authorized—by RCW 35.22.280(32). *See supra* Part B.

[13] The Legislature goes so far as to give an example in the same sentence of RCW 9.41.290: "specifically authorized by state law, as in RCW 9.41.300." RCW 9.41.300 is a regulatory measure; it prohibits firearms possession in certain locations, and allows cities to prohibit them in others.

attempt to read them in isolation. *See ITT Rayonier, Inc. v. Dalman*, 122 Wn.2d 801, 807, 863 P.2d 64 (1993) ("Statutory provisions must be read in their entirety and construed together, not piecemeal.").

In sum, we hold that RCW 9.41.290 does not occupy the field of taxation relating to firearms and ammunition and that the statute and the Ordinance do not irreconcilably conflict. We hold that RCW 9.41.290 does not preempt the Ordinance.

## CONCLUSION

Seattle Ordinance 124833 is constitutionally valid and not preempted by RCW 9.41.290. Under *Covell*, the Ordinance imposes a tax because its primary purpose is to raise revenue for the public benefit. That tax is specifically authorized under RCW 35.22.280(32), which grants first class cities broad tax powers, including the authority to levy a flat tax on gun sales. Finally, the Ordinance is not preempted by RCW 9.41.290 because the plain meaning of the statutory text excludes taxation from its preemptive scope. We affirm the superior court.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Watson, et al. v. City of Seattle, et al.,* 93723-1

Stephens, J.

WE CONCUR:

Johnson, J.

Wiggins, J.

Madsen, J.

Owens, J.

Gordon McCloud, J.

No. 93723-1

GONZÁLEZ, J. (concurring)—RCW 9.41.290 declares the State's intent to "preempt[] the entire field of firearms regulation." Phillip Watson and the other plaintiffs (collectively Watson) argue that the city of Seattle's (City) "tax" on firearms and ammunition is actually a "regulation" disguised as a tax and therefore preempted by RCW 9.41.290. I agree with the majority that this "tax" is a tax, but write separately to discuss the scope of evidence that courts should consider in deciding whether a fee constitutes a tax or a regulation.

The City's Ordinance 124833 (Ordinance) charges retail purchasers $25.00 for each firearm and either $0.02 or $0.05 for each round of ammunition, depending on the caliber. The City labeled the Ordinance a "tax," but we do not take labels at face value. *See Okeson v. City of Seattle*, 150 Wn.2d 540, 552, 78 P.3d 1279 (2003) (citing *Samis Land Co. v. City of Soap Lake*, 143 Wn.2d 798, 805, 23 P.3d 477 (2001)). Generally, a "regulation" governs conduct and may incidentally generate revenue, *see id.* at 551-52 (citing *Samis*, 143 Wn.2d at 805),

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

whereas a "tax" generates revenue and may incidentally govern conduct, *see id.* at

551 (citing *Dean v. Lehman*, 143 Wn.2d 12, 25, 18 P.3d 523 (2001)).[1]

The majority applies *Covell*'s three-factor test[2] to determine if the City

correctly labeled the Ordinance a "tax." While I agree with the dissent that the

*Covell* test may not be an adequate test in all preemption cases, I ultimately agree

with the majority that *Covell* is helpful and dispositive in this case involving

alleged regulatory fees. In addition to the three *Covell* factors, however, a fourth

factor is relevant—the charge's regulatory effect, separate from its purpose. *See*

*Dean*, 143 Wn.2d at 27 (suggesting a regulatory fee that provided more than an

incidental benefit to the general public could transform the regulation into a tax);

*Teter v. Clark County*, 104 Wn.2d 227, 233, 704 P.2d 1171 (1985) (suggesting a

regulatory fee that was not "incidental" to the regulatory scheme could transform

the regulation into a tax). Although Watson alleges that the "amounts charged to

firearm and ammunition businesses make it impractical or impossible to sell

firearms and ammunition in Seattle," he acknowledges that his allegations are

unsupported by any evidence.[3] Appellants' Opening Br. at 40. If Watson could

---

[1] *See* Hugh D. Spitzer, *Taxes vs. Fees: A Curious Confusion*, 38 GONZ. L. REV. 335, 352 (2003) ("Properly understood, regulatory fees are charges to cover the cost of the state's use of its regulatory powers which can be allocated to those who are either voluntarily or involuntarily receiving special attention from government regulators." (emphasis omitted)).

[2] *Covell v. City of Seattle*, 127 Wn.2d 874, 879, 905 P.2d 324 (1995).

[3] In Watson's motion for summary judgment, he distinguished actual regulations from de facto regulations and attempted to reserve arguments on whether "the Ordinance will result in de facto regulation of the sale of firearms or ammunition." Clerk's Papers at 31-32 n.2. He repeats that

2

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

prove the Ordinance would cause a significant regulatory effect, such as a stark drop in firearm sales, or demonstrate that the Ordinance significantly influences purchasing decisions, he might have a stronger argument that the "tax" is actually a regulation disguised as a tax. Even so, the outcome in this case may very well be the same considering *Covell*'s first and third factors weigh heavily in favor of classifying the Ordinance as a tax rather than a regulation.

Also, the majority improperly discounts the importance of legislative history in deciding whether a charge is a tax or regulation. *See* majority at 11-12. Evidence of legislative intent to circumvent a state preemption statute is important evidence that an ordinance may not be what the municipality purports it to be. Ordinarily, "the court will not go behind the legislative declaration *in the absence of evidence* tending to show that the declaration is sham, and that the ordinance is, in reality, a revenue measure." *Kimmel v. City of Spokane*, 7 Wn.2d 372, 374, 109 P.2d 1069 (1941) (emphasis added). But where there is evidence of pretextual lawmaking, a different rule applies. In this case, Watson provides evidence that that the City crafted the Ordinance to avoid statutory preemption, *see* Appellants' Opening Br. at 5-6, which necessitates increased judicial scrutiny of the label the

---

request in this court and urges us to remand for additional discovery should we rule against him. Appellants' Opening Br. at 40. At that stage, the burden was on Watson to show a disputed issue of material fact as to whether the tax would have a significant regulatory effect on firearm sales, which he did not. The trial court's dismissal was proper.

3

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

City applied to the Ordinance. While this case warrants increased scrutiny, such scrutiny does not mean Watson prevails. Though Watson proves that the City was conscious of the preemption statute and drafted an ordinance that would avoid preemption, there is nothing wrong with knowing the law and acting within its bounds—indeed, it is required. Watson failed to show that the City's tax label is a sham.

In the alternative to distinguishing taxes from regulations, Watson interprets "regulation" broadly to include taxation, so that any local tax on firearms or ammunition would conflict with state law. While taxes could be described as a form of regulation because taxes certainly can have an incidental regulatory effect, it is our duty to harmonize state and local laws. *Ayers v. City of Tacoma*, 6 Wn.2d 545, 556, 108 P.2d 348 (1940). "A state statute may preempt a local ordinance in two ways: it will 'preempt[] an ordinance on the same subject if the statute occupies the field, leaving no room for concurrent jurisdiction, or if a conflict exists such that the statute and the ordinance may not be harmonized.'" *Cannabis Action Coal. v. City of Kent*, 183 Wn.2d 219, 226, 351 P.3d 151 (2015) (alteration in original) (quoting *Lawson v. City of Pasco*, 168 Wn.2d 675, 679, 230 P.3d 1038 (2010)). Here, state law is plain and unambiguous; it says the State "fully occupies and preempts the entire field of firearms *regulation*." RCW 9.41.290 (emphasis

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Watson et al. v. City of Seattle*, No. 93723-1 (González, J., concurring)

added). It makes no mention of taxation.[4] It follows that local taxes on firearms are permissible, but local firearm regulations are not.

In sum, I concur. The City's firearm tax is lawful. The record does not contain evidence that the City intended for this "tax" to be a regulation or that this "tax" had a significant regulatory effect.

---

[4] Notably, chapter 9.41 RCW does not address taxation and our constitution distinguishes a local government's taxing authority from regulatory authority. CONST. art. XI, §§ 11, 12.

5

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

González, J.

Fairhurst, C.J.

*Watson et al. v. City of Seattle*, 93723-1
(Gordon McCloud, J., dissenting)

No. 93723-1

GORDON McCLOUD, J. (dissenting)—As the majority acknowledges, "RCW 9.41.290 forbids the local regulation of guns." Majority at 2. It is an explicit preemption provision; the statute "preempts the entire field of firearms regulation." RCW 9.41.290. It is a complete preemption provision; the statute says, "The State of Washington hereby fully occupies and preempts the entire field of firearms regulation . . . ." *Id.* And it is an expansive preemption provision; the legislature has amended it to bar more and more local activity in the firearms field over the last 30 years. It now preempts not just local regulations, but local "laws and ordinances" of all kinds that "relat[e] to firearms." *Id.* Seattle Ordinance 124833 is clearly a local "law[] or ordinance[]," and it clearly "relat[es] to firearms." It is therefore clearly preempted.

The majority reaches a different conclusion because it holds that this ordinance is not a regulatory fee under the *Covell*[1] factors and so it must, instead, be a tax. Majority at 10-15. And I agree completely with the majority's conclusion on

---

[1] *Covell v. City of Seattle*, 127 Wn.2d 874, 879, 905 P.2d 324 (1995).

1

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

that *Covell* point. But *Covell* was designed to distinguish between property taxes, which must be "uniform upon the same class of property," WASH. CONST. art. VII, § 1, and regulatory charges, which are not subject to that uniformity mandate. *Covell* was not designed to distinguish between regulations, "laws[,] and ordinances" that are preempted by a specific statute on the one hand, and taxes on the other. When statutory preemption is at issue, we use a different inquiry.

That different inquiry centers on the language of the preemption statute itself. Here, RCW 9.41.290 uses deliberately broad language that clearly encompasses both regulations *and* "laws and ordinances" if they have any relationship to "the registration, licensing, possession, purchase, sale, acquisition, transfer, discharge, and transportation of firearms, or any other element relating to firearms or parts thereof." RCW 9.41.290. Seattle Ordinance 124833 has a very close relationship with the "purchase, sale, acquisition, [and] transfer" of firearms—it targets them! Thus, while a uniform local tax that incidentally hits on sales of this product (while taxing various and sundry products) might not have a sufficient relationship with firearms to suffer preemption, this ordinance—which targets *only* firearms— certainly does. I therefore respectfully dissent.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Watson et al. v. City of Seattle*, 93723-1
(Gordon McCloud, J., dissenting)

ANALYSIS

When conducting statutory analysis, we start with the plain language of the statute. *Davis v. Cox*, 183 Wn.2d 269, 280, 351 P.3d 862 (2015) (citing *Eubanks v. Brown*, 180 Wn.2d 590, 597, 327 P.3d 635 (2014)). RCW 9.41.290, the preemption statute at issue here, provides in relevant part:

> The state of Washington hereby *fully occupies and preempts the entire field* of firearms regulation within the boundaries of the state, *including* the registration, licensing, possession, purchase, sale, acquisition, transfer, discharge, and transportation of firearms, or any other element relating to firearms or parts thereof . . . . Cities, towns, and counties or other municipalities may enact only those *laws and ordinances relating to firearms* that are specifically authorized by state law, as in RCW 9.41.300, and are consistent with this chapter. Such local ordinances shall have the same penalty as provided for by state law. *Local laws and ordinances* that are inconsistent with, more restrictive than, or exceed the requirements of state law *shall not be enacted and are preempted and repealed*, regardless of the nature of the code, charter, or home rule status of such city, town, county, or municipality.

(Emphasis added.)

The breadth of the statute in its current form is apparent from this plain language. Indeed, since the legislature enacted chapter 9.41 RCW in 1983, it has amended this statute three times, each time directly in response to an ordinance or judicial decision attempting to limit the statute's scope. *See Chan v. City of Seattle*, 164 Wn. App. 549, 551-53, 265 P.3d 169 (2011) (reciting history of legislative amendments). And each time, the legislature has only *broadened* the statute's

3

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

scope—reducing local governments' ability to legislate regarding firearms, not expanding it. *See* LAWS OF 1994, 1st Spec. Sess., ch. 7, § 429(2); *City of Seattle v. Ballsmider*, 71 Wn. App. 159, 163, 856 P.2d 1113 (1993); LAWS OF 1985, ch. 428, § 1; *Second Amendment Found. v. City of Renton*, 35 Wn. App. 583, 588, 668 P.2d 596 (1983); LAWS OF 1983, ch. 232, § 12. Most recently, our Court of Appeals recognized that RCW 9.41.290's broad language preempted the city of Seattle's attempt to limit firearms in public parks. *Chan*, 164 Wn. App. at 562.

The question in this case, therefore, is whether Seattle's latest attempt is fundamentally different from the one rejected in *Chan*. The city of Seattle certainly tried to avoid language that would obviously trigger the preemption statute. *See, e.g.*, Clerk's Papers at 61. But the answer to this question does not depend—as the majority suggests—on whether the ordinance should be labeled a regulation or a tax under a legal test designed for a different purpose. Instead, it depends on the language of the statute. I find three key phrases relevant to determining whether the legislature intended RCW 9.41.290 to reach the firearm-specific tax at issue here. I address each one in turn.

1. RCW 9.41.290 Preemption Extends to All Laws "Relating to" Firearms

RCW 9.41.290 preempts all local laws "relating to firearms" that are "inconsistent with, more restrictive than, or exceed the requirements of state law."

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

"Relating to" is an extremely broad prepositional phrase.[2] *See Smith v. United States*, 508 U.S. 223, 229, 113 S. Ct. 2050, 124 L. Ed. 2d 138 (1993); *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96-97, 103 S. Ct. 2890, 77 L. Ed. 2d 490 (1983) (concluding with "no difficulty" that the words "relate to" in ERISA (Employee Retirement Income Security Act of 1974, Pub. L. No. 93-406, 88 Stat. 829) encompass and preempt general state antidiscrimination laws). Indeed, in *Smith*, the Court interpreted a statutory provision penalizing use of a firearm "'during and in relation to'" a crime so broadly that it was held to encompass the *exchange* of a firearm for drugs. 508 U.S. at 229.

I see no reason why that language would be subject to a narrower reading here. Starting with this statutory language, Seattle Ordinance 124833's charge of $25.00 per firearm and $0.02 to $0.05 per round of ammunition certainly "relat[es] to firearms."

> 2. RCW 9.41.290 Preempts Not Just Local "Regulations" but *All* "Laws and Ordinances"

As the majority points out, RCW 9.41.290 uses the term "firearms regulation." On that basis, the majority concludes that RCW 9.41.290 "preempts only the

---

[2] This phrase appears in the statute twice. *See* RCW 9.41.290 ("or any other element relating to firearms or parts thereof"; "[c]ities . . . may enact only those laws and ordinances relating to firearms that are specifically authorized by state law").

5

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

'regulation' of firearms" and holds that "regulation is not taxation." Majority at 23.
It bases this assertion on its analysis of the *Covell* factors.

As noted above, I agree that under *Covell*, the ordinance should be considered
a tax and not a regulatory fee for certain purposes; specifically, for purposes of
determining whether the state constitutional "uniform[ity]" requirement applies.
The majority acknowledges that this is the provenance and purpose of the *Covell*
analysis, majority at 7, as indeed it must. *See Okeson v. City of Seattle*, 150 Wn.2d
540, 551, 78 P.3d 1279 (2003) (local governments can impose fees under general
police powers but may not impose taxes "without statutory or constitutional
authority" (citing *Covell*, 127 Wn.2d at 879)).

But distinguishing between legislation subject to the constitutional uniformity
requirement and legislation free from that requirement is very different from
deciding whether a specifically worded preemption statute reaches firearm-specific
taxes. The answer to the preemption question is located in the preemption statute at
issue, not the "uniform[ity]" mandate, which is not at issue.

And the preemption statute at issue here explicitly states that it "fully occupies
and preempts the entire field of firearms regulation." RCW 9.41.290. It also clearly
targets not only "regulations" in the narrow sense, but all "[l]ocal laws and

6

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

ordinances . . . regardless of the nature of the code, charter, or home rule status of such city, town, county, or municipality." RCW 9.41.290.

This statutory language therefore encompasses within its preemptive scope not just "regulation[s]" in the narrow sense. It encompasses any legislative action a municipality could take. It is a well-settled principle of statutory interpretation that "a single word in a statute should not be read in isolation, and that '"the meaning of words may be indicated or controlled by those with which they are associated."'" *State v. Roggenkamp*, 153 Wn.2d 614, 623, 106 P.3d 196 (2005) (quoting *State v. Jackson*, 137 Wn.2d 712, 729, 976 P.2d 1229 (1999) (quoting *Ball v. Stokely Foods, Inc.*, 37 Wn.2d 79, 87-88, 221 P.2d 832 (1950))). The statute's later inclusion of the broader language reaching "laws and ordinances" must therefore inform our reading of the word "regulation"—and how broadly or narrowly that word is understood.

It is also well established that "we interpret a statute to give effect to all language, so as to render no portion meaningless or superfluous." *Rivard v. State*, 168 Wn.2d 775, 783, 231 P.3d 186 (2010). But in focusing exclusively on the word "regulation"—and ignoring the legislature's subsequent statement that RCW 9.41.290 also reaches other "laws and ordinances"—the majority does just that: it reads the broader words "laws and ordinances" out of the statute entirely.

7

*Watson et al. v. City of Seattle*, 93723-1
(Gordon McCloud, J., dissenting)

The majority's holding also ignores cases in which our courts have analyzed RCW 9.41.290's impact on far more than just pure "regulations" in the narrow sense—including cases where the "regulation" at issue was a "'Rule/Policy'" issued by a city parks department, *Chan*, 164 Wn. App. at 555; a criminal violation of the Seattle Municipal Code, *Ballsmider*, 71 Wn. App. at 160; or a common law cause of action recognized in other states, *Knott v. Liberty Jewelry & Loan, Inc.*, 50 Wn. App. 267, 276, 748 P.2d 661 (1988).

I would instead read the word "regulation" to encompass this ordinance, which singles out the "purchase, sale, acquisition, [and] transfer" of firearms and ammunition, and which clearly falls within the legislature's broader "laws and ordinances" language. RCW 9.41.290.

3. RCW 9.41.290's List of Preemption Topics Is Illustrative, Not Exclusive

A third key term—"including"—also shows the breadth of the statute's preemptive reach. We have recognized that when the legislature uses the word "including" before a list of examples, it "plainly establishes" them to be "illustrative examples rather than an exhaustive list." *State v. Larson*, 184 Wn.2d 843, 849, 365 P.3d 740 (2015) (statutory language "'including, but not limited to'" indicated illustrative, not exhaustive, list); *see also Fed. Land Bank of St. Paul v. Bismarck Lumber Co.*, 314 U.S. 95, 100, 62 S. Ct. 1, 86 L. Ed. 65 (1941) ("the term 'including'

8

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

is not one of all-embracing definition, but connotes simply an illustrative application

of the general principle" (citing *Phelps Dodge Corp. v. Nat'l Labor Relations Bd.*,

313 U.S. 177, 189, 61 S. Ct. 845, 85 L. Ed. 1271 (1941))). The legislature used the

word "including" twice in RCW 9.41.290. This shows that the list of preempted

topics is illustrative, not exclusive.

## CONCLUSION

RCW 9.41.290's plain language demonstrates clear legislative intent to

preempt local "laws and ordinances" that "relat[e] to firearms" as broadly as

possible. A city tax that singles out the sale of firearms and ammunition for

disadvantageous treatment is therefore preempted. I respectfully dissent.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Watson et al. v. City of Seattle*, 93723-1
(Gordon McCloud, J., dissenting)

10