[No. 65123-4-I.   Division One.   October 31, 2011.]

WINNIE CHAN ET AL., *Respondents*, v. THE CITY OF SEATTLE
ET AL., *Appellants*.

*Peter S. Holmes, City Attorney*, and *Gary E. Keese, Assistant*, and *Steven W. Fogg* and *Molly A. Malouf* (of *Corr Croinin Michelson Baumgardner & Preece LLP*), for appellants.

*George E. Greer, Daniel J. Dunne Jr.*, and *David S. Keenan* (of *Orrick Herrington & Sutcliffe LLP*), for respondents.

¶1 SCHINDLER, J. — Except as authorized in RCW 9.41.290, the legislature expressly preempts municipalities from enacting firearm regulations prohibiting the possession of firearms. The City of Seattle appeals the trial court's determination that RCW 9.41.290 preempts the Seattle Department of Parks and Recreation from enacting a rule that prohibits the possession of firearms at designated city parks and park facilities open to the public. We affirm.

I

¶2 In 1935, the legislature adopted laws regulating the possession and use of firearms based on the uniform firearms act approved by the National Conference of Commissioners on Uniform State Laws and Proceedings. LAWS OF

1935, ch. 172; *Cherry v. Mun. of Metro. Seattle*, 116 Wn.2d 794, 800, 808 P.2d 746 (1991).[1]

¶3 In 1983, the legislature enacted chapter 9.41 RCW to prevent municipalities from adopting inconsistent laws and ordinances regulating firearms. LAWS OF 1983, ch. 232, § 12; *Cherry*, 116 Wn.2d at 801. Former RCW 9.41.290 provided, in pertinent part:

> Cities, towns, and counties may enact only those laws and ordinances relating to firearms that are consistent with this chapter. Local laws and ordinances that are inconsistent with, more restrictive than, or exceed the requirements of state law shall not be enacted.

LAWS OF 1983, ch. 232, § 12.

¶4 In 1985, the legislature amended former RCW 9.41.290 to preempt municipalities from regulating firearms. LAWS OF 1985, ch. 428, § 1. Former RCW 9.41.290 states:

> The state of Washington hereby fully occupies and preempts the entire field of firearms regulation within the boundaries of the state, including the registration, licensing, possession, purchase, sale, acquisition, transfer, discharge, and transportation of firearms, or any other element relating to firearms or parts thereof, including ammunition and reloader components. Cities, towns, and counties or other municipalities may enact only those laws and ordinances relating to firearms that are specifically authorized by state law and are consistent with this chapter. Such local ordinances shall have the same or lesser penalty as provided for by state law. Local laws and ordinances that are inconsistent with, more restrictive than, or exceed the requirements of state law shall not be enacted and are preempted and repealed, regardless of the nature of the code, charter, or home rule status of such city, town, county, or municipality.

LAWS OF 1985, ch. 428, § 1. The legislature also adopted former RCW 9.41.300. LAWS OF 1985, ch. 428, § 2. Former

---

[1] *See also* HANDBOOK OF NATIONAL CONFERENCE OF COMMISSIONERS ON UNIFORM STATE LAWS AND PROCEEDINGS 562-67 (1930).

RCW 9.41.300 prohibited the possession of firearms in certain places and expressly authorized municipalities to restrict the discharge and possession of firearms. Former RCW 9.41.300(2) also stated that "[n]otwithstanding RCW 9.41.290, cities, towns, counties, and other municipalities may enact laws and ordinances" restricting the possession and discharge of firearms in certain places. LAWS OF 1985, ch. 428, § 2(2).

¶5 In 1994, the legislature amended former RCW 9.41.290 and former RCW 9.41.300 to preempt municipalities from regulating the possession of firearms unless "specifically authorized by state law, as in RCW 9.41.300." LAWS OF 1994, 1st Spec. Sess., ch. 7, § 428. The legislature repealed the language "Notwithstanding RCW 9.41.290," to make clear its intent to fully occupy and preempt municipalities from regulating firearm possession. LAWS OF 1994, 1st Spec. Sess., ch. 7, § 429(2).[2]

## II

¶6 On June 6, 2008, the mayor of the City of Seattle issued an executive order directing departments to review "all rules, policies, and leases for all City of Seattle properties and amend such rules, policies, and leases in an effort to develop a 'gun-free' policy for City of Seattle properties."[3] The executive order states, in pertinent part:

> WHEREAS, the Washington State Supreme Court has held that a municipal property owner, like a private property owner, may impose conditions related to firearms for the use of its property in order to protect its property interest; and
>
> WHEREAS, the recent shooting involving a permitted handgun highlights the importance of having gun-free policies on City of Seattle property; and

---

[2] The legislature also added a subsection that makes the penalties for violation of municipal ordinances as authorized under RCW 9.41.290 consistent with state law. LAWS OF 1994, 1st Spec. Sess., ch. 7, § 429(4).

[3] As originally filed in October 2009, the lawsuit named then-Mayor Gregory Nickels as one of the defendants. The current mayor is Mike McGinn. The parties have therefore substituted Mayor McGinn for Mayor Nickels.

. . . .

NOW, THEREFORE, I, GREGORY J. NICKELS, Seattle Mayor, declare that it is the policy of the City of Seattle, acting in its proprietary capacity, to adopt and enforce policies, rules, and contractual agreements that prohibit the possession of dangerous weapons, including firearms, and with the exception of guns issued to law enforcement personnel, on City property.

## III

¶7 On October 13, the Washington State Attorney General issued a formal opinion (AGO) on the question of whether a city has "the authority to enact a local law that prohibits possession of firearms on city property or in city-owned facilities." 2008 Op. Att'y Gen. No. 8, at 1.[4] In addressing the scope of the state's preemption of firearm regulation, the AGO analyzed the language of the statute, the legislative history, and case law, and concludes that RCW 9.41.290 preempts the authority of a city "to enact local laws that prohibit possession of firearms on city property or in city-owned facilities." 2008 Op. Att'y Gen. No. 8, at 1. The AGO states, in pertinent part:

RCW 9.41.290 "fully occupies and preempts the entire field of firearms regulation" and preempts a city's authority to adopt firearms laws or regulations of application to the general public, unless specifically authorized by state law. Accordingly, RCW 9.41.290 preempts a city's authority to enact local laws that prohibit possession of firearms on city property or in city-owned facilities.

. . . .

While RCW 9.41.290 does not preempt all city authority with regard to firearms, it does preempt a city's authority to adopt firearms laws or regulations of application to the general public, unless specifically authorized by state law. Accordingly, RCW 9.41.290 preempts a city's authority to enact local laws

---

[4] (Boldface omitted.)

that prohibit possession of firearms on city property or in city-owned facilities.

2008 Op. Att'y Gen. No. 8, at 1 (quoting RCW 9.41.290), 11.

IV

¶8 On October 14, 2009, the City of Seattle Department of Parks and Recreation (Department) issued a "Rule/Policy" that prohibits the possession of firearms "as a Condition of Entry Into or Use of Designated Parks Department Facilities at Which Children and Youth are Likely to be Present" (the Firearms Rule).[5] The Firearms Rule provides, in pertinent part:

**4.0 GENERAL POLICY: CARRYING CONCEALED FIRE-ARMS AND DISPLAYING FIREARMS ARE NOT PER-MITTED AT PARKS DEPARTMENT FACILITIES AT WHICH CHILDREN AND YOUTH ARE LIKELY TO BE PRESENT**

The Department, in its proprietary capacity as owner or manager of Department facilities, does not permit the carry-

---

[5] The Department sets forth a number of findings in support of the Firearms Rule. The findings state, in pertinent part:

**1.1** The City owns and operates various City real property and facilities, including property and facilities under the jurisdiction of the Seattle Parks and Recreation Department ("Parks" or "Department").

**1.2** In 2008 over 1.8 million people visited and attended programs in Parks Department owned community centers, pools, teen centers and environmental learning centers; over 108,000 children and youth visited wading pools; over 59,000 youth events were scheduled at sports fields; and, countless numbers of children and youth visited playgrounds, play areas, and sports courts.

**1.3** As the owner and operator of Department facilities at which children and youth are likely to be present, the City has a strong interest in promoting facility users' and visitors' confidence, particularly families with children, that such facilities are safe and secure places to visit.

**1.4** Carrying concealed firearms and displaying firearms at Department facilities at which children and youth are likely to be present threatens the City's interests in promoting the use of those facilities by children, youth and their families.

**1.5** Based on the relatively small percentage of Seattle residents who have concealed weapons permits, we conclude that the vast majority of users of Department facilities where children and youth are present are families who do not carry firearms.

ing of concealed firearms or the display of firearms, except by law enforcement officers and on-duty security officers, at Parks Department facilities at which: 1) children and youth are likely to be present and, 2) appropriate signage has been posted to communicate to the public that firearms are not permitted at the facility.

¶9 The Firearms Rule identifies designated park facilities subject to the Rule:

**5.0 DESIGNATED PARKS DEPARTMENT FACILITIES AT WHICH CHILDREN AND YOUTH ARE LIKELY TO BE PRESENT**

**5.1 Facilities at which children and youth are likely to be present.** The following Department facilities are designated as facilities where children and youth are likely to be present:

**5.1.1** Playgrounds and Children's play areas;

**5.1.2** Sports fields, Sports Courts and other sports facilities;

**5.1.3** Swimming and Wading Pools;

**5.1.4** Spray Parks (Water Play Areas);

**5.1.5** Teen Centers;

**5.1.6** Community Centers;

**5.1.7** Environmental Learning Centers;

**5.1.8** Small craft centers;

**5.1.9** Performing Arts Centers;

**5.1.10** Tennis Centers;

**5.1.11** Skateboard Parks;

**5.1.12** Golf Courses; and,

**5.1.13** Swim beaches.

¶10 The Firearms Rule also addresses posting signs prohibiting possession of firearms at designated park facilities prohibiting possession of firearms. Section 5.2 provides:

The Superintendent may post at a Parks facility at which children and youth are likely to be present appropriate signage

indicating to the public that firearms are not permitted at that facility.

¶11 Section 6.0, "Withdrawal of Permission to Remain at a Particular Designated Facility," states that the Firearms Rule does not include any "Criminal or Civil Penalties." However, Section 6.0 also states that violation of the Firearms Rule "shall be enforced in the same manner and pursuant to the same ordinances and statutes as similar conditions could be enforced by other public or private property owners." Section 6.0 of the Firearms Rule states:

### 6.0 WITHDRAWAL OF PERMISSION TO REMAIN AT A PARTICULAR DESIGNATED FACILITY

**6.1 No Criminal or Civil Penalties.** This policy/rule does not include any criminal or civil penalties. Rather, it constitutes conditions placed upon a person's permission to enter or remain at a designated Parks Department facility at which appropriate signage has been posted. Such conditions shall be enforced in the same manner and pursuant to the same ordinances and statutes as similar conditions could be enforced by other public or private property owners.

**6.2 Withdrawal of Permission to Enter or Remain at the Designated Facility.** The following individuals have authority to withdraw in writing or orally a person's permission to enter or remain at a designated Parks Department facility:

**6.2.1** Sworn Seattle police officers; and,

**6.2.2** Other City employees or agents delegated such authority by the Superintendent.

¶12 On October 14, the mayor announced the adoption of the Firearms Rule. The press release states that "after signs are posted" notifying the public of the Firearms Rule, possession of firearms is prohibited at designated parks and park facilities. According to the press release, violators of the Firearms Rule are subject to citation or arrest for criminal trespass.

Anyone who enters one of the posted facilities with a gun will be asked by Parks personnel or Seattle police officers to leave

the areas where firearms are prohibited. If they refuse to leave, they may be subject to citation or arrest for criminal trespass by Seattle police.

¶13 Winnie Chan, Robert Kennar, Raymond Carter, Gray Peterson, and Gary Goedecke filed a lawsuit challenging adoption of the Firearms Rule against the City of Seattle, City of Seattle Mayor Greg Nickels, the Department, and the superintendent of the Department (collectively City) and seeking declaratory and injunctive relief.[6] There is no dispute that each of the plaintiffs possesses a valid and current concealed pistol license and were prohibited from carrying a concealed firearm at designated city parks and park facilities.[7] The complaint alleges the state has the exclusive right to regulate possession of firearms and the City did not have the authority to prohibit the plaintiffs from carrying concealed firearms at park facilities open to the public. The plaintiffs requested an order preventing the City from enforcing the Firearms Rule and ordering the City to remove the signs prohibiting the public from carrying firearms at designated park facilities open to the public.

¶14 On cross motions for summary judgment, the court ruled that RCW 9.41.290 preempts the Firearms Rule.[8] The court entered an order declaring the Firearms Rule "null and void," ordered the City to remove all signs within 30 days, and awarded statutory attorneys' fees and costs to the plaintiffs. The City appeals.

---

[6] The Second Amendment Foundation Inc., Citizens Committee for the Right to Keep and Bear Arms, Washington Arms Collectors Inc., and the National Rifle Association of America Inc. were also named as plaintiffs in the lawsuit. The trial court dismissed the organizations for lack of "standing to bring claims."

[7] For example, Chan carries a firearm while not on duty as a community corrections officer. Chan frequents several parks, as well as the Hiawatha Community Center to play tennis. After the Firearms Rule went into effect, the Department revoked permission for her to remain at the Hiawatha Community Center while carrying her firearm.

[8] The parties do not argue that the Firearms Rule violates the state or federal constitutions.

V

¶15 The City contends RCW 9.41.290 does not preempt the Firearms Rule because (1) the City is acting in its proprietary capacity, (2) the Firearms Rule is not a criminal regulation, and (3) the Firearms Rule was not adopted as a law or ordinance.

¶16 Under article XI, section 11 of the Washington State Constitution, a city has the authority to "make and enforce within its limits all such local police, sanitary and other regulations as are not in conflict with general laws." A statute preempts regulation of "the same subject if the statute occupies the field." *Lawson v. City of Pasco*, 168 Wn.2d 675, 679, 230 P.3d 1038 (2010). A statute preempts the field if the legislature expressly states its intent to do so or such intent is necessarily implied. *Lawson*, 168 Wn.2d at 679.

¶17 The meaning of a statute is a question of law. We review statutes and questions of law de novo. *Berger v. Sonneland*, 144 Wn.2d 91, 102-03, 26 P.3d 257 (2001). Our fundamental objective in construing a statute is to ascertain and give effect to legislative intent. *Lake v. Woodcreek Homeowners Ass'n*, 169 Wn.2d 516, 526, 243 P.3d 1283 (2010). If the meaning of a statute is plain on its face, we must give effect to that plain meaning as the expression of what the legislature intended. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002). A statute is ambiguous only if susceptible to two or more reasonable interpretations. *Burton v. Lehman*, 153 Wn.2d 416, 423, 103 P.3d 1230 (2005).

¶18 Except as otherwise authorized, RCW 9.41.290 preempts firearms regulation. RCW 9.41.290 states:

> **State preemption.** The state of Washington hereby fully occupies and preempts the entire field of firearms regulation within the boundaries of the state, including the registration, licensing, possession, purchase, sale, acquisition, transfer, dis-

charge, and transportation of firearms, or any other element relating to firearms or parts thereof, including ammunition and reloader components. Cities, towns, and counties or other municipalities may enact only those laws and ordinances relating to firearms that are specifically authorized by state law, as in RCW 9.41.300, and are consistent with this chapter. Such local ordinances shall have the same penalty as provided for by state law. Local laws and ordinances that are inconsistent with, more restrictive than, or exceed the requirements of state law shall not be enacted and are preempted and repealed, regardless of the nature of the code, charter, or home rule status of such city, town, county, or municipality.

¶19 RCW 9.41.300 prohibits the possession of weapons in certain places, and explicitly authorizes municipalities to enact laws and ordinances that restrict the discharge of firearms, prohibit possession of firearms at a stadium or convention center owned by the city, and restrict the locations where firearms may be sold. RCW 9.41.300 states, in pertinent part:

(1) It is unlawful for any person to enter the following places when he or she knowingly possesses or knowingly has under his or her control a weapon:

(a) The restricted access areas of a jail, or of a law enforcement facility, or any place used for the confinement of a person (i) arrested for, charged with, or convicted of an offense, (ii) held for extradition or as a material witness, or (iii) otherwise confined pursuant to an order of a court, except an order under chapter 13.32A or 13.34 RCW. Restricted access areas do not include common areas of egress or ingress open to the general public;

(b) Those areas in any building which are used in connection with court proceedings, including courtrooms, jury rooms, judge's chambers, offices and areas used to conduct court business, waiting areas, and corridors adjacent to areas used in connection with court proceedings. The restricted areas do not include common areas of ingress and egress to the building that is used in connection with court proceedings, when it is possible to protect court areas without restricting ingress and egress to

the building. The restricted areas shall be the minimum necessary to fulfill the objective of this subsection (1)(b).

. . . .

The local judicial authority shall designate and clearly mark those areas where weapons are prohibited, and shall post notices at each entrance to the building of the prohibition against weapons in the restricted areas;

. . . .

(2) Cities, towns, counties, and other municipalities may enact laws and ordinances:

(a) Restricting the discharge of firearms in any portion of their respective jurisdictions where there is a reasonable likelihood that humans, domestic animals, or property will be jeopardized. Such laws and ordinances shall not abridge the right of the individual guaranteed by Article I, section 24 of the state Constitution to bear arms in defense of self or others; and

(b) Restricting the possession of firearms in any stadium or convention center, operated by a city, town, county, or other municipality, except that such restrictions shall not apply to:

(i) Any pistol in the possession of a person licensed under RCW 9.41.070 or exempt from the licensing requirement by RCW 9.41.060; or

(ii) Any showing, demonstration, or lecture involving the exhibition of firearms.

(3)(a) Cities, towns, and counties many enact ordinances restricting the areas in their respective jurisdictions in which firearms may be sold, but, except as provided in (b) of this subsection, a business selling firearms may not be treated more restrictively than other businesses located within the same zone. An ordinance requiring the cessation of business within a zone shall not have a shorter grandfather period for businesses selling firearms than for any other businesses within the zone.

(b) Cities, towns, and counties may restrict the location of a business selling firearms to not less than five hundred feet from primary or secondary school grounds, if the business has a storefront, has hours during which it is open for business, and posts advertisements or signs observable to passersby that

firearms are available for sale. A business selling firearms that exists as of the date a restriction is enacted under this subsection (3)(b) shall be grandfathered according to existing law.

¶20 The plain language of RCW 9.41.290 preempts municipalities from enacting laws and ordinances regulating the possession of firearms. The statute states that the "state of Washington hereby *fully occupies and preempts* the entire field of firearm regulation within the boundaries of the state" and broadly defines firearms regulations to include registration, licensing, possession, purchase, sale, and discharge. RCW 9.41.290.[9] RCW 9.41.290 specifically addresses the limited authority of a municipality to regulate firearms. RCW 9.41.290 states, in pertinent part:

> Cities, towns, and counties or other municipalities may enact only those laws and ordinances relating to firearms that are specifically authorized by state law, as in RCW 9.41.300, and are consistent with this chapter.

¶21 RCW 9.41.290 also explicitly states that local laws that are "inconsistent with, more restrictive than, or exceed the requirements of state law" are "preempted and repealed, regardless of the nature of the code, charter, or home rule status of such city, town, county, or municipality."

¶22 We hold that under the plain language of RCW 9.41.290 and RCW 9.41.300, the City's attempt to regulate the possession of firearms at designated park areas and park facilities open to the public by adopting the Firearms Rule is preempted by state law.

¶23 In an effort to avoid the effect of the state law preempting the possession and regulation of firearms, the City relies on two supreme court cases, *Cherry* and *Pacific Northwest Shooting Park Ass'n v. City of Sequim*, 158 Wn.2d 342, 144 P.3d 276 (2006) (*PNSPA*), to argue that because it is acting in its proprietary capacity, RCW 9.41.290

---

[9] (Emphasis added.)

does not apply. Neither *Cherry* nor *PNSPA* supports the argument that the City has the authority to regulate the possession of firearms at designated park areas and park facilities open to the public.

¶24 In *Cherry*, the court addressed whether RCW 9.41.290 preempts a municipal employer from adopting a policy prohibiting employees from carrying concealed weapons while on the job. Because the language of RCW 9.41.290 did not clearly "invalidate the authority of municipal employers to regulate or otherwise prohibit a municipal employee's possession of firearms while on the job," the court held that the statute "does not address internal employment rules limiting on-duty possession of firearms by public employees in the workplace." *Cherry*, 116 Wn.2d at 798-99. After examining the legislative history, the court states that legislature enacted RCW 9.41.290

> to reform that situation in which counties, cities, and towns could each enact conflicting local criminal codes regulating the general public's possession of firearms . . . to eliminate a multiplicity of local laws relating to firearms and to advance uniformity in criminal firearms regulation.

*Cherry*, 116 Wn.2d at 801. Because the legislature intended to preempt only firearm laws that applied "to the general public," the court concluded internal employment rules and policies for employee conduct limiting possession of firearms at the workplace are not preempted by RCW 9.41.290. *Cherry*, 116 Wn.2d at 801.

¶25 In *PNSPA*, the Pacific Northwest Shooting Park Association applied for a temporary use permit to hold a gun show at the city's convention center. The city issued the permit with a number of conditions that prohibited unlicensed dealers from purchasing, acquiring, or selling firearms. *PNSPA*, 158 Wn.2d at 346-47. PNSPA sued the city alleging tortious interference with a contractual relationship and violation of RCW 9.41.290 and RCW 9.41.300 by imposing unauthorized conditions on gun sales by a private party. *PNSPA*, 158 Wn.2d at 347-48.

¶26 The court held that the city could impose the conditions because RCW 9.41.300(2)(b) expressly states that cities can restrict the possession of firearms in a convention center. *PNSPA*, 158 Wn.2d at 355.[10] The court also cited *Cherry* for "the general proposition that when a municipality acts in a capacity that is comparable to that of a private party, the preemption clause does not apply." *PNSPA*, 158 Wn.2d at 357. The court states that a municipality acts in a proprietary capacity "when it 'acts as the proprietor of a business enterprise for the private advantage of the [municipality]' and it may 'exercise its business powers in much the same way as a private individual or corporation.'" *PNSPA*, 158 Wn.2d at 357.[11] The court also concluded that RCW 9.41.290 did not apply because the city was granting a temporary permit to use the city-owned convention center in *PNSPA*, and the city was "acting in its private capacity as a property owner." *PNSPA*, 158 Wn.2d at 357.

> [RCW 9.41.290] does not prohibit a private property owner from imposing conditions on the sale of firearms on his or her property. RCW 9.41.290. Applying our reasoning in *Cherry*, it follows that a municipal property owner, like a private property owner, may impose conditions related to firearms for the use of its property in order to protect its property interests. For the same reason that a municipal employer may enact policies regarding possession of firearms in the workplace because a

---

[10] The court rejected the argument that the gun show was a "showing, demonstration, or lecture involving the exhibition of firearms" under RCW 9.41.300(2)(b)(ii). *PNSPA*, 158 Wn.2d at 355 (emphasis and internal quotation marks omitted). RCW 9.41.300 states:

> (2) Cities, towns, counties, and other municipalities may enact laws and ordinances:
> . . . .
> (b) Restricting the possession of firearms in any stadium or convention center, operated by a city, town, county, or other municipality, except that such restrictions shall not apply to:
> . . . .
> (ii) Any showing, demonstration, or lecture involving the exhibition of firearms.

[11] (Alteration in original) (quoting *Hite v. Pub. Util. Dist. No. 2 of Grant County*, 112 Wn.2d 456, 459, 772 P.2d 481 (1989)).

private employer may do so, a municipal property owner should be allowed to impose conditions related to sales of firearms on its property if a private property owner may impose them.

*PNSPA*, 158 Wn.2d at 357. However, in reaching the conclusion that the city was acting in its proprietary capacity by imposing conditions on the sales of firearms, the court emphasizes that "[t]*he critical point is that the conditions the city imposed related to a permit for private use of its property. They were not laws or regulations of application to the general public.*" *PNSPA*, 158 Wn.2d at 357.[12]

¶27 Relying heavily on *PNSPA*, the City argues that because it is acting in its proprietary capacity, it has the authority to adopt the Firearms Rule. But here, unlike in *PNSPA*, RCW 9.41.300 does not allow the City to regulate firearms in parks and park facilities open to the public, and the City is not acting as " 'the proprietor of a business enterprise' " for private advantage in adopting the Firearms Rule. *PNSPA*, 158 Wn.2d at 357 (quoting *Hite v. Pub. Util. Dist. No. 2 of Grant County*, 112 Wn.2d 456, 459, 772 P.2d 481 (1989)). The Firearms Rule regulates the possession of firearms at designated city parks and park facilities open to the general public.[13] *PNSPA* does not support the City's position that RCW 9.41.290 does not apply because it is acting as a property owner and setting conditions on use of its property. Except as authorized by the legislature, RCW 9.41.290 precludes a municipality from regulating the possession of firearms at city-owned park facilities open to the general public.

¶28 Next, the City argues that RCW 9.41.290 does not apply because the Firearms Rule is not a criminal firearms regulation. The City cites to the court's determination in *Cherry* that the intent of the legislature in adopting RCW 9.41.290 was to eliminate conflicting criminal firearm laws.

---

[12] (Emphasis added.)

[13] According to the findings in the Firearms Rule, over 1.8 million people visited park facilities open to the public in 2008.

The City also relies on the language of the Firearms Rule that states, "No Criminal or Civil Penalties. This policy/rule does not include any criminal or civil penalties."[14] Contrary to the City's argument, the press release issued at the same time the Firearms Rule was adopted also states that anyone who refuses to leave park facilities covered by the Rule "may be subject to citation or arrest for criminal trespass by Seattle police." Section 6.1 states that violation of the Firearms Rule "shall be enforced in the same manner and pursuant to the same ordinances and statutes as similar conditions could be enforced by other public or private property owners." The record shows that violation of the Firearms Rule would be enforced through trespass laws.[15] The superintendant of the Department instructed employees to "call Seattle Police" if a person does not leave the facility after being notified that they are in violation of the Firearms Rule. In addition, the internal guidelines implementing the Firearms Rule state that "Seattle Police may use criminal trespass laws as appropriate."

¶29 The City also contends that RCW 9.41.290 does not apply because the statute precludes a municipality only from adopting "laws and ordinances" regulating the possession of firearms, and not a rule or policy. But the City cites no support for the proposition that it can regulate the possession of firearms through rule or policy when it cannot do so by law or ordinance.

---

[14] (Boldface omitted.)

[15] RCW 9A.52.070 governs first degree criminal trespass and provides:

> (1) A person is guilty of criminal trespass in the first degree if he or she knowingly enters or remains unlawfully in a building.
> (2) Criminal trespass in the first degree is a gross misdemeanor.

RCW 9A.52.080 governs second degree criminal trespass and provides:

> (1) A person is guilty of criminal trespass in the second degree if he or she knowingly enters or remains unlawfully in or upon premises of another under circumstances not constituting criminal trespass in the first degree.
> (2) Criminal trespass in the second degree is a misdemeanor.

## VI

¶30 In the alternative, the City asserts the court erred in granting injunctive relief. We review the decision to grant injunctive relief on summary judgment de novo. *Mains Farm Homeowners Ass'n v. Worthington*, 121 Wn.2d 810, 813, 854 P.2d 1072 (1993).

¶31 To obtain injunctive relief, the plaintiffs had the burden of showing (1) a clear legal or equitable right, (2) a well-grounded fear of immediate invasion of that right, and (3) that the acts complained of either result in or will result in actual and substantial injury. *Tyler Pipe Indus., Inc. v. Dep't of Revenue*, 96 Wn.2d 785, 792, 638 P.2d 1213 (1982) (quoting *Port of Seattle v. Int'l Longshoremen's & Warehousemen's Union*, 52 Wn.2d 317, 319, 324 P.2d 1099 (1958)). All three criteria must be met. *Wash. Fed'n of State Emps., Council 28 v. State*, 99 Wn.2d 878, 888, 665 P.2d 1337 (1983). Because injunctive relief is equitable in nature, the criteria establishing injunctive relief should also include balancing the "relative interests of the parties and, if appropriate, the interests of the public." *Tyler Pipe*, 96 Wn.2d at 792.

¶32 The City argues the plaintiffs have not established either a clear legal right under RCW 9.41.290, or substantial injury. The City also argues the court did not balance the relative interests of the parties with the interests of the public. We disagree with the City.

¶33 There is no dispute that the plaintiffs possess valid concealed pistol permits. Unless otherwise prohibited by state law, a person with a valid permit is allowed to carry a concealed pistol "for the purposes of protection or while engaged in business, sport, or while traveling." RCW 9.41-.070(1). There is also no dispute that the plaintiffs were not allowed to possess firearms at designated parks or park facilities open to the public. The record shows that the court took into consideration the express language of state law

and the interests of the parties. The court is not required to take into account the interests of the public. *Tyler Pipe*, 96 Wn.2d at 792. The trial court did not err in entering an order granting injunctive relief by enjoining enforcement of the Firearms Rule and requiring the City to remove the signs prohibiting the public from possessing firearms at designated park facilities. *See Ronken v. Bd. of County Comm'rs of Snohomish County*, 89 Wn.2d 304, 311, 572 P.2d 1 (1977).

## VII

¶34 In sum, we hold that RCW 9.41.290 preempts the Firearms Rule. Except as expressly authorized by the legislature, municipalities are prohibited from regulating the possession of firearms at city-owned park facilities open to the public. Whether to amend RCW 9.41.300 to prohibit possession of firearms at city-owned parks and park facilities frequented by children and youth is a question for the legislature to decide.

¶35 We affirm.

Cox and Lau, JJ., concur.

Review denied at 173 Wn.2d 1025 (2012).