IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| LISA THOMPSON, an individual,<br><br>Appellant,<br><br>v.<br><br>LANDMARC VI CONDOMINIUM HOMEOWNERS ASSOCIATION, a Washington Corporation; and BRANDON LUC PHILLIPS, individually,<br><br>Respondent. | No. 87968-5-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

COBURN, J. — After condominium owner Brandon Luc Phillips replaced carpeting in his unit with Luxury Vinyl Plank (LVP) flooring, the unit owner directly below, Lisa Thompson, sued. Specifically, Thompson sued Phillips and the Landmarc VI Condominium Homeowners Association (HOA) for negligence and injunctive relief, and also sued Phillips individually for nuisance, and Landmarc individually for breach of contract and violation of the Consumer Protection Act (CPA). All parties moved for summary judgment. The trial court denied Thompson's motion, granted defendants' motions, and awarded Landmarc attorney fees. We affirm.

FACTS

Thompson and her partner, Marvin Warren, moved into a unit of the Landmarc VI Condominium in Des Moines, Washington in January 2019. Phillips moved into a

condominium unit directly above Thompson and Warren around September 2020. Thompson's and Phillips' units are nearly identical in floor plan.

Around December 6, 2020, Phillips began renovating the flooring of his unit. Prior to Phillips renovating the unit, he spoke with then Landmarc Board president, Chris Mowery, to discuss his proposed renovation and show her the flooring material he intended to use. Mowery gave Phillips verbal approval to begin renovating his floors, replacing the existing carpeting with LVP.

On December 9, 2020, Phillips texted Mowery, Jeff Blunt (another HOA Board member), and Thompson to ask whether it was okay if he "demo[ed] for the next hour." Mowery asked what Phillps was doing and Phillips responded that he was installing new floors. Thompson responded and said "[w]e're not home we won't notice! No." Thompson followed up with two additional texts, stating "[c]arpet?" and "[j]ust be sure to check the bylaws to make sure you are in compliance." Phillips responded "[v]inyl plank" and "[w]ill do thanks."

Around December 10 Thompson and Warren went to Phillips' unit after Phillips asked to borrow tools from them for his flooring installation. Phillips showed them the LVP flooring that he was replacing the carpet with and informed them that he was not installing underlayment below the flooring. Phillips explained that the LVP was not glued to the floor and is known as a "floating floor," meaning that there is a soundproofing layer on the bottom of the LVP that is one piece with the LVP. A few days later, around December 15, Warren went to Phillips' apartment to help him move furniture and saw that around a third of the total LVP flooring was installed.

On December 16 Thompson texted HOA board member Jan Horst asking why the HOA Board did not follow the HOA "CCR's"[1] and require Phillips to submit a written request to replace his carpeting with LVP flooring. Horst explained that the HOA requires written approval when a tenant replaces their flooring with hard surface flooring and LVP is not a hard surface flooring; so, he did not need written approval. Two days later, Phillips emailed the HOA Board asking for approval to remove his carpet and replace it with LVP flooring in the living room, kitchen, and hallway of his unit. He stated that he was ceasing all work on his flooring until he received approval. Additionally, he explained that his flooring was "5.5 mm thick floating floor with an underlay attached in each piece for soundproofing" and that although the Board had already seen the flooring, they could inspect it at any time because he wanted "to be neighborly and abide by the rules of our established HOA." Mowery approved the installation the following day. Subsequently, Phillips installed the LVP flooring according to the manufacturer instructions.

Thompson maintained that after the LVP flooring was installed, she and Warren heard loud thumping, furniture dragging, exercise equipment noise, and constant movement of people. Thompson specifically stated that shortly after the flooring was installed, Phillips had a party of approximately 15-20 people and a dog for several hours until about 10 p.m. Additionally, Thompson and Warren stated that they were "confined 24/7" to their unit because of the COVID-19 pandemic, and Thompson, an educator, was expected to conduct online classes during the pandemic but, she claims, the noise from Phillips' unit made it "nearly impossible to do so."

---

[1] Thompson was presumably referring to Landmarc's Declaration and Covenants, Conditions, Restrictions and Reservations (Declaration).

3

Thompson sent a letter to the Landmarc HOA Board about Phillips' floors. In this letter, Thompson explained that she had discussed the issue with the board previously and that the flooring Phillips installed has made her unit "extremely loud." Thompson asked that the Board have Phillips remedy the damage he has done to the building and her unit and that Thompson wished for the issue to be resolved amicably. David Gehrke responded a month later on behalf of the Board of Directors and then-President Mowery,[2] providing background that other tenants in the building had replaced their flooring with Pergo, a type of "floating floor," without prior written HOA Board approval. Gehrke stated that Phillips' flooring was a "floating floor" that the HOA Board agreed was not a "hard surface flooring." Additionally, Gehrke included that, even though not required, Phillips received written HOA Board approval.

In February 2021 Thompson retained an attorney who sent a letter to the HOA Board repeating Thompson's complaints and concerns, and threatened legal action if the Board did not take prompt action. The Board asked Thompson to make her unit available so they could inspect the nature and extent of the noise, but Thompson refused. Therefore, the Board took no further action.

Thompson sued both Landmarc and Phillips for negligence and injunctive relief in November 2023.[3] Thompson also sued Landmarc for breach of contract and violation of the CPA and Phillips for nuisance.

---

[2] Gehrke declared in December 2024 that he is the current Landmarc HOA President.
[3] Thompson also sued Landmarc and Phillips for intentional and negligent infliction of emotional distress but moved to voluntarily dismissed those claims. With no response from respondents, the motion was unopposed, and the court granted it without prejudice and no award of fees or costs.

The parties retained acoustics experts to test the sound between Phillips' and Thompson's units. Thompson retained Seth Tomlinson, whose acoustics measurements were based on the Apparent Impact Insulation Class (AIIC) and the Normalized Impact Sounds Rating (NISR). Tomlinson tested Phillips' bedroom and living room which had carpet and LVP, respectively. The bedroom carpet had an AIIC of 79 and an NISR of 80. The living room LVP had an AIIC of 54 and an NISR of 56. The higher the number, the more insulation the floor's assembly has, meaning less noise is heard between units.

Tomlinson explained that the International Building Code (IBC) requires an NISR of no less than 45. However, Tomlinson stated that it is "widely accepted" that meeting minimum code does not provide adequate sound insolation. Therefore, Tomlinson compared his results to three different recommended impact sound isolation references. First, the International Code Council's (ICC) Guideline for Acoustics has a Grade A preferred NISR of 57 and a Grade B acceptable NISR of 52. The Marshall Long Architectural Acoustics standards range from high, medium, and minimum quality AIICs of 70, 60, and 50, respectively. The minimum quality is for normal apartments, hotels, motels, nursing homes, and hospitals, while the medium quality is for good apartments and normal condominiums and the high quality is for high quality condominiums. Additionally, the standard for Green Globes, which evaluates sustainability, health and wellness, and resilience, has a minimum AIIC of 50. From these results, Tomlinson concluded that both flooring materials meet the IBC Code minimum but the difference between the two flooring materials—LVP and carpet—is significant, meaning LVP is likely to increase sound and reasonably expect noise complaints over carpet.

The respondents' expert, Erik Miller-Klein, tested the NISR of Phillips living room LVP flooring, and determined that the room had an NISR of 54. Miller-Klein also concluded that the living room LVP met IBC NISR standard of no less than 45, ICC Grade II average performance of 52 and the U.S. Department of Housing and Urban Development Grade II average performance of 52. Miller-Klein explained that the City of Des Moines has adopted the minimum code requirements outlined by the IBC as its own regulations related to noise and sound transmission between dwelling units. Miller-Klein also noted that the living and dining rooms in Thompson's unit were lightly furnished and the lack of furniture, such as a couch and dining table, can increase reverberation time and lower the effective footfall insulation performance. Therefore, Miller-Klein stated that while "this does not significantly change the outcome, … the current tested conditions likely do not represent a common living condition." Tomlinson also noted that Thompson's unit was "minimally furnished" but did not address whether it would affect the outcome or was not representative of common living conditions.

All parties moved for summary judgment. The court granted Landmarc's and Phillips' motions for summary judgment and denied Thompson's motion. Thompson appeals the court's summary judgment orders. Landmarc moved for attorneys' fees and costs in the trial court totaling $66,227.09 under Section 18.1 of Landmarc's Declaration and Covenants, Conditions, Restrictions and Reservations (Declaration) as well as RCW 4.84.330, RCW 64.32, and RCW 64.34.455. Thompson filed a response arguing that the request for attorney fees should be denied for multiple reasons discussed further below. The court, in a four-page order, explained why it reduced Landmarc's request to $58,305.00 in attorney fees and $7,009.30 in costs. Thompson filed a

supplemental notice of appeal of the trial court's order granting Landmarc's motion for attorneys' fees and costs.

DISCUSSION

Standard of Review

We review summary judgments de novo. Strauss v. Premera Blue Cross, 194 Wn.2d 296, 300, 449 P.3d 640 (2019). "Summary judgment is appropriate when 'there is no genuine issue as to any material fact and … the moving party is entitled to a judgment as a matter of law.'" Id. (alteration in original) (quoting Ranger Ins. Co. v. Pierce County, 164 Wn.2d 545, 552, 192 P.3d 886 (2008)); CR 56(c). Summary judgment is appropriate only where a trial would be "useless." Wheeler v. Ronald Sewer Dist., 58 Wn.2d 444, 446, 364 P.2d 30 (1961).

We must construe all facts and inferences in favor of the nonmoving party. Scrivener v. Clark Coll., 181 Wn.2d 439, 444, 334 P.3d 541 (2014). Because the trial court granted summary judgment in Phillips' and Landmarc's favor, we view all facts and draw all reasonable inferences in the light most favorable to Thompson. See Drinkwitz v. Alliant Techsystems, Inc., 140 Wn.2d 291, 295, 996 P.2d 582 (2000). "At the very least, to support a motion for summary judgment the moving party is required to set out its version of the facts and allege that there is no genuine issue as to the facts as set out." Hash v. Children's Orthopedic Hosp. & Med. Ctr., 110 Wn.2d 912, 916, 757 P.2d 507 (1988). Alternatively, a party moving for summary judgment can meet its initial burden by showing the court that the nonmoving party has not shown sufficient evidence to support its case. Young v. Key Pharms., Inc., 112 Wn.2d 216, 225 n.1, 770 P.2d 182 (1989). "'In such a situation, there can be 'no genuine issue as to any material

fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial,'" thereby entitling the moving party to summary judgment. Young, 112 Wn.2d at 225 (quoting Celotex Corp v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

Motion to Strike

As a preliminary issue, Landmarc and Phillips renew their motions raised below in their response brief to Thompson's motion for summary judgment. Both Landmarc and Phillips took issue with Thompson's declarations where she made assertions on flooring installation, quality, and other flooring matters because Thompson is not a qualified expert under ER 702. They also objected to statements in Thompson's declarations that were based on hearsay. Phillips asked the trial court to not consider the inadmissible testimony. Landmarc joined Phillips' request and moved the court to strike the inadmissible portions of Thompson's declaration. During the summary judgment hearing, Landmarc reminded the court of its motion to strike portions of Thompson's declaration. The trial court "reserved" on the issue. Ultimately, the court did not directly address the motion in its written orders denying Thompson's motion for summary judgment and granting Landmarc's and Phillips' motions for summary judgment.[4]

Though Landmarc requested a motion to strike the challenged portions of Thompson's declarations, Phillips' motion only asked the court to not consider the portions that were inadmissible, which may have very well been what occurred. The lack of a clear record is not material because this court reviews trial court rulings on the

---

[4] Of the court's three summary judgment orders, only the one denying Thompson's motion for summary judgment lists Thompson's declarations as having been considered.

admissibility of evidence on summary judgment de novo. <u>Kenco Enters. Nw., LLC v. Wiese</u>, 172 Wn. App. 607, 614, 291 P.3d 261 (2013).

We agree with Landmarc that Thompson has not presented the foundation to support her ability to make conclusory statements related to the LVP flooring other than her personal observation as to what she saw in Phillips' unit and relaying what he, as a party opponent, stated to her regarding his intentions to not install anything additional between the LVP as they came and the subfloor.[5] The court does not consider conclusory affidavits. <u>Id.</u> at 615. We need not expressly strike hearsay statements in Thompson's declaration because a court cannot consider inadmissible evidence when ruling on a summary judgment motion. <u>Id.</u> Hearsay is inadmissible. ER 802.

Negligence

Thompson brought a negligence claim against both Landmarc and Phillips. "In an action for negligence a plaintiff must prove four basic elements: (1) the existence of a duty, (2) breach of that duty, (3) resulting injury, and (4) proximate cause." <u>Ranger Ins. Co.</u>, 164 Wn.2d at 552. "The existence of a duty is a question of law." <u>Briggs v. Pacificorp</u>, 120 Wn. App. 319, 322, 85 P.3d 369 (2003) (citing <u>Hertog v. City of Seattle</u>, 138 Wn.2d 265, 275, 979 P.2d 400 (1999)). Duty includes three parts (1) who owes the duty, (2) to whom, and (3) what is the standard of care. <u>Gall v. McDonald Indus.</u>, 84 Wn. App. 194, 202, 926 P.2d 934 (1996). "Summary judgment dismissal of negligence

---

[5] We do not consider Thompson's statements in her declaration as to whether Phillips' flooring was defectively installed, whether the flooring was installed without "any" noise-suppressing material, whether the pre-attached pads on the LVP flooring were designed solely for other purposes than to serve as sound-suppressing material, and that it is not recommended to install rigid vinyl plank flooring in multi-level structures without separate soundproofing pads. Nor has she established the foundation to be able to testify that both Pergo and SPC Luxury Vinyl plank are considered hard surface flooring materials not suited for multi-level, multi-family condominiums without the appropriate underlayment.

claims is proper if the defendant owed no duty to the plaintiff." Funkhouser v. Wilson, 89 Wn. App. 644, 653, 950 P.2d 501 (1998).

A. Landmarc

Thompson alleges that Landmarc owed her a duty to enforce the Declaration, specifically Section 13.5.2, and require Phillips to get written HOA Board approval before installing his LVP flooring and meaningfully investigate his flooring.

Section 13.5.2 of the Declaration provides:

> 13.5.2 Right to Modify Unit. Without limiting the generality of the foregoing, each unit owner may, at his sole cost and expense, maintain, repair, paint, or finish, refinish or change surfacing of the interior surfaces of the ceilings, floors, window frames, doors, trim, and the perimeter walls of his unit; provided that hard surface flooring not originally installed may not be installed without the prior written approval of the Board of Directors. Each unit owner may alter, substitute, add or remove any fixtures attached to said ceilings, floors or walls. This section shall not be construed to permit interference with or damage to the structural integrity of the building or interference with the use and enjoyment of the common area and facilities, or of the other units, or to authorize, without Board of Directors' approval and compliance with the requirements of this Declaration, intrusion into the common or limited common area, or any waste.

For support, Thompson relies on Section 18.3 of the Declaration, arguing that it requires strict compliance and that Landmarc cannot approve Phillips' flooring after he has already begun installation. Section 18.3 of the Declaration states, in relevant part:

> The failure of the Board of Directors in any one or more instances to insist upon the strict performance of any of the terms, covenants, conditions or restrictions of this Declaration, or of the Bylaws, or to exercise any right or option contained in such documents, or to serve any notice or to institute any action, shall not be construed as a waiver or a relinquishment for the future of such term, covenant, condition or restriction, but such term, covenant, condition or restriction shall remain in full force and effect.

This section supports Thompson's contention that even if the Board had previously approved hard surface flooring verbally, it does not mean owners no longer would be

required to get written approval to install hard surface flooring before installation.

However, Section 18.3 does not establish that the Board has a duty to Thompson

relevant to her claims. Specifically, Thompson does not cite anything that mandates

Board action if an owner does not obtain written approval prior to installing hard surface

flooring, let alone requires the HOA Board to deny an owner's request entirely. In other

words, Thompson assumes that the HOA Board would not have approved of the

flooring if Phillips had properly requested written approval prior to starting his

installation, but the HOA Board did provide written approval of his flooring.

Additionally, Thompson alleges that Landmarc did not meaningfully investigate

Phillips' flooring before approving it. Phillips showed Mowery flooring samples before he

began installation. Though Thompson contends the Board should have done more, she

does not offer any evidence that it had a duty to do more than it did.

Section 18.1 of the Declaration provides that:

> Each owner shall comply strictly with the provisions of this Declaration, the Bylaws, and the administrative rules and regulations made pursuant thereto as they may be lawfully amended from time to time. Failure to comply shall be grounds for an action to recover sums due for damages or injunctive relief or both, maintainable by the Board of Directors on behalf of the owners, or in a proper case, by any aggrieved owner. Failure to comply shall also entitle the Board of Directors to collect all attorneys' fees incurred by it by reason of such failure, irrespective of whether any suit or other judicial proceeding is commenced; and if suit is brought because of such failure, all costs of suit may be recovered in addition to attorneys' fees.

While failing to comply with the Declaration "shall be grounds for an action"

"maintainable by the Board of Directors on behalf of the owners, or in a proper case, by

an aggrieved owner," nowhere in the Declaration is the Board required to bring this

action or not provide approval after an alleged violation. At oral argument, Landmarc's

11

attorney claimed that the Board could have fined unit owners for violation of the Declaration.[6] However, the Declaration supports that the Board could have brought an action to recover damages or to receive injunctive relief.

We conclude that because Thomspon does not demonstrate that Landmarc owed Thompson a duty to "meaningfully investigate" Phillips' flooring installation project or to disapprove his LVP material, her negligence claim against Landmarc fails.

B.  Phillips

Similarly, Thompson alleges that Phillips owed her a duty because he violated the Declaration in failing to receive written HOA Board approval before installing his LVP flooring. However, this is a duty that Phillips owed to Landmarc, not a duty that Phillips owed to Thompson. Nor does Thompson present admissible evidence that Phillips owed Thompson a duty to insert a separate soundproofing layer beneath his LVP. We hold that because Thompson does not demonstrate that Phillips owed Thompson a duty, her negligence claim fails.

Nuisance

Thompson argues that the trial court erred in dismissing her claim against Phillips for nuisance. RCW 7.48.120 defines a nuisance as

> unlawfully doing an act, or omitting to perform a duty, which act or omission either annoys, injures or endangers the comfort, repose, health or safety of others, offends decency … or in any way renders other persons insecure in life, or in the use of property.

---

[6] Wash. Ct. of Appeals oral arg., Thompson v. Landmarc VI Condo. Homeowners Ass'n, No. 87968-5-I (Jan. 14, 2026), at 15 min., 23 sec. through 15 min., 32 sec., video recording by TVW, Washington State's Public Affairs Network, https://tvw.org/video/division-1-court-of-appeals-2026011294/?eventID=2026011294.

In <u>Hurley v. Port Blakely Tree Farms L.P.</u>, 182 Wn. App. 753, 769, 332 P.3d 469, 477 (2014), this court described when a nuisance claim is duplicative of a negligence claim.

> Nuisance can be based upon intentional, reckless, or negligent conduct. [I]t is, of course, possible for the same act to constitute negligence and also give rise to a nuisance. However, [s]eparate legal theories based upon one set of facts constitute one claim for relief under CR 54(b). A single claim for relief, on one set of facts, is not converted into multiple claims, by the assertion of various legal theories. Thus, a negligence claim presented in the garb of nuisance need not be considered apart from the negligence claim. In those situations where the alleged nuisance is the result of defendant's alleged negligent conduct, rules of negligence are applied.

<u>Hurley</u>, 182 Wn. App. at 769-70 (alterations in original) (citations omitted) (internal quotation marks omitted). In <u>Hurley</u>, this court affirmed the trial court's dismissal of a nuisance claim as duplicative because the claim was grounded in the same facts and allegations as the negligence claim. <u>Id.</u> at 771. In the instant case, Thompson's nuisance claim is duplicative of her negligence claim against Phillips.

Thompson grounds her nuisance claim on the same facts and allegations as her negligence claim. In Thompson's complaint, she states the basis for her nuisance claim as follows: "By replacing flooring in his Unit without prior Board approval and in such fashion that significantly increased sound permeation to Unit 3, Defendant Brandon acted and/or failed to act in a manner that caused Plaintiff annoyance and injury to comfort and enjoyment in the use of Unit 3." Thompson does not assert that Phillips intentionally or recklessly caused her to be annoyed or injured her comfort and enjoyment of the use of her unit.

As discussed above, Phillips obtained written approval from the board and Thompson did not demonstrate that Phillips had a duty to add a separate soundproofing

layer beneath his LVP. Moreover, two acoustics experts, including Thompson's expert, conducted testing that showed the NISR for the floor installed in Phillips' unit exceeded the minimum required by the IBC, which is the minimum code requirement adopted by the city of Des Moines. So, the undisputed evidence is that Phillips, with permission of the Board, installed LVP that met the minimum code requirements of the city of Des Moines. The only additional evidence Thompson relies on to support her excessive noise claim is her own report that she has experienced loud thumping, the sound of furniture being dragged, exercise equipment noise and noise caused by constant movement of people. She offers this observation without notion of frequency or duration. She also offers that Phillips hosted "a party" with approximately 15-20 people, along with a dog that barked and scampered around, chasing both people and toys for several hours, until about 10 p.m.

Thompson relies on an unreported case, Hickey v. Dog Patch Group, noted at 94 Wn. App. 1026, 1999 WL 104470, to allege that noise levels within regulatory limits do not negate the existence of a nuisance. Not only is Hickey non-binding authority, but it is also distinguishable. In Hickey, the plaintiff appealed the trial court's decision to modify its previously issued injunction after the defendant's dog shelter constructed mitigating structures to prevent noise. Id. at *1. The court vacated the modification and remanded for further proceedings because the trial court did not consider whether the defendant's dog shelter was a reasonable use of her property after the mitigation efforts. Id. The court specifically discussed that the court found the nuisance was abated because noise levels were brought down to permissible ranges set forth in WAC 173-60-040. Id. Additionally, the court explained that the Noise Control Act of 1974 provides the

statutory authority for the regulations the court relied on in determining permissible noise levels. Id. at *2. Significantly, however, the Act provides that "[n]othing in this chapter shall be construed to deny, abridge, or alter alternative rights of action or remedies in equity or under common law or statutory law, criminal or civil." Id. at *2 (alteration in original). Therefore, the court reasoned that "in cases of this kind", meaning under the Noise Control Act of 1974, "[t]he fundamental question … is whether the use of the property is reasonable or unreasonable." Id. at *2.

The Hickey court determined that it was not apparent from the record if the trial court considered whether operation of the dog shelter was a reasonable use of the property because their findings only relied on noise levels deemed acceptable by state regulations. Id. at *3. Accordingly, as a trial court must make ultimate findings of fact on material issues, and it did not in Hickey, the court could not intelligently review the issues raised on appeal. Id. Hickey is inapposite.

We conclude that on this record Thompson does not raise a genuine dispute as to a material fact; and if reasonable minds could not differ on the conclusion, then as a matter of law, the trial court did not err in dismissing the nuisance claim.

<u>Consumer Protection Act</u>

Thompson contends that the trial court erred when it denied her CPA claim against Landmarc. Whether a particular action gives rise to a CPA violation is reviewable as a question of law. Keyes v. Bollinger, 31 Wn. App. 286, 289, 640 P.2d 1077 (1982). "A valid CPA claim requires (1) an unfair or deceptive act or practice in trade or commerce that impacts the public interest, and (2) a resulting injury to the claimant's business or property." Int'l Ultimate, Inc. v. St. Paul Fire & Marine Ins. Co.,

122 Wn. App. 736, 756, 87 P.3d 774 (2004) (citing Industrial Indem. Co. of the Nw, Inc. v. Kallevig, 114 Wn.2d 907, 920-21, 792 P.2d 520 (1990)).

Thompson argues that Landmarc engaged in unfair and deceptive conduct because it selectively enforced HOA Section 13.5.2. RCW 19.86.010(2) states that "'Trade' and 'commerce' shall include the sale of assets or services, and any commerce directly or indirectly affecting the people of the state of Washington." We conclude that the manner in which the Board enforces its Declaration does not qualify as trade or commerce.

<u>Breach of Contract</u>

Thompson contends that the trial court erred when it denied her claim against Landmarc for breach of contract, which is based on the Declaration. Thompson specifically argues that Section 13.5.2 of the Declaration imposed a contractual duty on Landmarc to ensure that no hard surface flooring was installed in any unit without written Board approval.

To prove breach of contract, a plaintiff must establish that there is a contract that imposes a duty on a defendant and that defendant failed to perform that duty. Jacob's Meadow Owners Ass'n v. Plateau 44 II, LLC, 139 Wn. App. 743, 757 n.3, 162 P.3d 1153 (2007). However, such a declaration is not a contract. "A contract is a promise or set of promises for the breach of which the law gives a remedy, or the performance of which the law in some way recognizes as a duty." RESTATEMENT (SECOND) OF CONTRACTS § 1 (1981); accord Wash. Fed'n of State Emps., AFL-CIO, Council 28, AFSCME v. State, 101 Wn.2d 536, 549, 682 P.2d 869 (1984). In contrast, condominium declarations are not promises between parties but are recorded real property

instruments. <u>Bellevue Pac. Ctr. Condo. Owners Ass'n v. Bellevue Pac. Tower Condo. Ass'n</u>, 124 Wn. App. 178, 188, 100 P.3d 832 (2004). Condominium owners are not bound to declarations under the same rules as parties to a contract; rather, owners have the power to amend a declaration by vote. <u>See</u> RCW 64.32.090(13); RCW 64.34.264(1). In the instant case, the Declaration's bylaws may be amended by consent of more than 60 percent of the Board of Directors or unit owners. <u>See</u>, <u>e.g.</u>, <u>Mohandessi v. Urb. Venture LLC</u>, 13 Wn. App. 2d 681, 699, 468 P.3d 622 (2020) (allowing residential declaration amendment by consent of more than 67 percent of owners).

Because Thompson fails to allege a cause of action supporting a breach of contract claim against Landmarc, the trial court correctly granted Landmarc's summary judgment motion on this basis.

Injunctive Relief

Thompson argues that the court erred in dismissing her request for injunctive relief against Landmarc and Phillips. An injunction is an equitable remedy that is within the court's discretion to grant. <u>Holmes Harbor Water Co., Inc. v. Page</u>, 8 Wn. App. 600, 605, 508 P.2d 628 (1973). "To obtain injunctive relief, the plaintiff[] ha[s] the burden of showing: (1) a clear legal or equitable right, (2) a well-grounded fear of immediate invasion of that right, and (3) that the acts complained of either result in or will result in actual and substantial injury." <u>Chan v. City of Seattle</u>, 164 Wn. App. 549, 567, 265 P.3d 169 (2011) (citing <u>Tyler Pipe Indus., Inc. v. Dep't of Revenue</u>, 96 Wn.2d 785, 792, 638 P.2d 1213 (1982)). "'An injunction will not issue to protect a right … which may never arise.'" <u>State ex rel. Hays v. Wilson</u>, 17 Wn.2d 670, 673, 137 P.2d 105 (1943) (quoting 32 C.J. <u>Injunctions</u> § 14, at 35 (1923)). An injunction is a remedy, not an independent

17

cause of action. <u>Markoff v. Puget Sound Energy Inc.</u>, 9 Wn. App. 2d 833, 851, 447 P.3d 577 (2019).

Thompson's request for injunctive relief is based on her other claims already addressed. As these claims were properly dismissed, there is no basis to seek injunctive relief.[7]

<u>Attorneys' Fees</u>

Thompson first argues that the trial court erred in awarding attorneys' fees to Landmarc because it is not entitled to such fees under Declaration Section 18.1, RCW 4.84.330[8], RCW 64.32, and RCW 64.34.455.

This court applies a two-part standard of review to a trial court's attorneys' fees award: "(1) we review de novo whether there is a legal basis for awarding attorney fees by statute, under contract, or in equity and (2) we review a discretionary decision to award or deny attorney fees and the reasonableness of any attorney fees award for an abuse of discretion." <u>Falcon Properties LLC v. Bowfits 1308 LLC</u>, 16 Wn. App. 2d 1, 11, 478 P.3d 134 (2020).

Courts may award attorney fees only when a contract provision, a statute, or a recognized ground in equity authorizes it. <u>King County v. Vinci Constr. Grands Projets/Parsons RCI/Frontier-Kemper, JV</u>, 188 Wn.2d 618, 625, 398 P.3d 1093 (2017).

---

[7] Because we conclude that the trial court correctly dismissed Thompson's claims, we need not address whether Declaration Section 10.8 precludes Landmarc's liability.

[8] We need not address whether the trial court erred in awarding attorney fees under Section 18.1 of the Declaration and RCW 4.84.330. Landmarc cites to no published case that supports awarding attorney fees on this basis, and Thompson does not address the implication from published cases holding that a condominium declaration is not a contract. <u>See</u> <u>Bellevue Pac. Ctr. Condo. Owners Ass'n</u>, 124 Wn. App. at 188; <u>Mohandessi</u>, 13 Wn. App. 2d at 699.

Thompson argues that awarding attorney fees under RCW 64.32 and RCW 64.34.455 was in error because RCW 64.34.010 sets out the applicability of the Condominium Act, which states that this chapter applies to all condominiums created in Washington after July 1,1990. The Landmarc HOA was created on June 29, 1990, and, thus, the Horizontal Property Regimes Act applies. Landmarc agrees that the Horizontal Property Regimes Act applies to condominiums created prior to July 1, 1990, and that it does not contain an attorney fee provision for a claim against a condominium association. However, they correctly point out that RCW 64.34.010(1) applies the attorney fees provision of RCW 64.34.455 to condominiums created prior to July 1, 1990, to "the extent necessary in construing [RCW 64.34.455]" only with respect to "events and circumstances occurring after July 1, 1990."

RCW 64.34.455 provides:

> If a declarant or any other person subject to this chapter fails to comply with any provision hereof or any provision of the declaration or bylaws, any person or class of persons adversely affected by the failure to comply has a claim for appropriate relief. The court, in an appropriate case, may award reasonable attorney's fees to the prevailing party.

Thompson next argues that this provision does not apply because there were no claims filed against her in this matter asserting that she failed to comply with any provision of the Condominium Act or of the Declaration. Notably, Thompson does not actually argue that the claims she made against Landmarc, asserting that the Board failed to enforce the Declaration, would not fall under the Condominium Act and provide a basis to award fees to Thompson if she had prevailed on her claims.

Moreover, this court has already held that, under RCW 64.34.455, "A defendant can be awarded fees as a prevailing party under the Condominium Act." Eagle Point

Condo. Owners Ass'n v. Coy, 102 Wn. App. 697, 706, 9 P.3d 898 (2000). The reward under this statue is discretionary. See Mohandessi, 13 Wn. App. 2d at 706.

Thompson has the burden to establish that the trial court abused its discretion. Wash. State Comm. Access Project v. Regal Cinemas, Inc., 173 Wn. App. 174, 219, 293 P.3d 413 (2013). Not only does Thompson present unpersuasive arguments, but she also ignores the record that supports why the trial court would have awarded fees. The Board tried to investigate Thompson's noise complaints, but she refused to let them in her unit until after she initiated litigation. Landmarc had to retain an expert witness to test the acoustics in the units. The trial court found Thompson's claims meritless. We hold that the trial court did not abuse its discretion in awarding fees to Landmarc under RCW 64.34.455.[9]

Thompson also contends that the trial court did not provide adequate findings of fact and conclusions of law in support of its attorneys' fees award below. We review a trial court's award of attorney fees for abuse of discretion. Mayer v. City of Seattle, 102 Wn. App. 66, 79, 10 P.3d 408 (2000). A trial court abuses its discretion when the decision is manifestly unreasonable, based on untenable grounds, or when no reasonable person would take the court's position. Id. The trial court must supply findings of fact and conclusions of law sufficient to permit this court to determine why the trial court awarded the amount in question. SentinelC3, Inc v. Hunt, 181 Wn.2d 127, 144, 331 P.3d 40 (2014).

---

[9] Thompson raises new arguments in her reply brief that we do not consider. "'A contention presented for the first time in the reply brief will not receive consideration on appeal.'" State v. Tien Thuy Ho, 8 Wn. App. 2d 132, 140-41, 437 P.3d 726 (2019) (quoting Fosbre v. State, 70 Wn.2d 578, 583, 424 P.2d 901 (1967)).

With its motion for attorney fees, Landmarc included a declaration from their attorney detailing his hourly billing rate as well as their associate attorney, paralegal, and legal assistant's billing rate. The declaration also included the billable attorney's fees and costs for Greg Haffner, who was an attorney on this case before he withdrew from the suit. Finally, the declaration included an activities report for the attorneys, which together totaled $59,250.00 in attorneys' fees. After considering all motions, responses, and declarations therein, the court granted Landmarc's motion for fees, explaining that their ledgers are "sufficiently detailed to inform the Court of the work performed." The court made several findings and conclusions that spanned four pages. The court found that the defendant's motion is supported by declarations which summarize counsel's experience, their normal billing rates, and the work performed. The court stated it was familiar with the rates charged by civil litigation counsel in the area. The court found that the hourly rates counsel sought were reasonable for their skill in this geographical area. The court observed that counsel's rate was similar to the rate Landmarc's previous attorney charged. The court declined to award attorney fees and costs to Landmarc's previous attorney because of his conflict and forced withdrawal from the case and the court lacked information regarding his experience as an attorney. The court also found:

> 10. The Court has reviewed the hours expended on this case and the amount and nature of the work described in Defendant Landmarc's fee ledger as well as the work the Court has observed throughout the case. The Court finds that the number of hours spent was reasonable given the complexity of a case such as this and the conduct of the Plaintiff. Although the Plaintiff brought numerous causes of action, the Court observes that they all arose primarily from the same set of facts, and thus the legal work Defendant Landmarc's counsel devoted to the contract claims were intertwined with work performed on the other causes of action.

11. The Court further observes that Plaintiff's counsel had an opportunity to provide the Court with his own fees and hours spent on the case so that the Court could make a comparison of the fees between the parties but he chose not to.

The court awarded $58,305.00 in attorney fees and $7,009.30 in costs. We reject Thompson's argument that the court provided inadequate findings and conclusions.

Thompson also argues that the trial court did not enter proper findings of fact because it stated that she alleged seven causes of action against Landmarc when two of those causes of action were voluntarily dismissed and one of them was only against Phillips, not Landmarc. The court did not find that Thompson alleged seven causes of action against Landmarc. The court found that Thompson "filed suit alleging seven causes of action against the defendants." To the extent Thompson is suggesting that the court failed to properly segregate time based on the claims that were filed against Landmarc versus claims filed against Phillips or were voluntarily dismissed, they offer no specifics as to what work should not have been included. More importantly, when claims all relate to the same fact pattern, courts are not required to artificially segregate time. Boguch v. Landover Corp., 153 Wn. App. 595, 620, 224 P.3d 795 (2009). The trial court in the instant case specifically found that "[a]lthough the Plaintiff brought numerous causes of action, the Court observes that they all arose primarily from the same set of facts." (Emphasis added).

We hold that RCW 64.34.455 provided a proper basis to award Landmarc attorneys' fees and costs below and that the court did not abuse its discretion in the amount awarded. For similar reasons, we grant Landmarc's request for attorneys' fees and costs on appeal under RCW 64.34.455. Matter of RV, 14 Wn. App. 2d 211, 228 P.3d 531 (2020) ("When a statute allows an award of attorney fees to a party at trial, the

appellate court has inherent authority to make such an award on appeal."); <u>Granite Falls Libr. Cap. Area v. Taxpayers of Granite Falls Libr. Cap. Area</u>, 134 Wn.2d 825, 843, 953 P.2d 1150 (1998).

CONCLUSION

We affirm.

_____
Coburn, J.

WE CONCUR:

_____          _____
Díaz, J.                                                      Mann, J.